Moore v. Mazon Estate, 24 N. M. 666.    .

Action by James R. Moore against the Mazon Estate, Incorporated. Judgment for plaintiff, and defendant appeals. Affirmed.

N. B. FIELD, of Albuquerque, for appellant. A. B. RENEHAN, of Santa Fe, and R. P. BARNES, of Albuquerque (F. E. WOOD, of Albuquerque, of counsel), for appellee.

## OPINION OF THE COURT.

HANNA, C. J.   This is an appeal from the district court for Bernalillo county by the Mazon Estate, Incorporated, from the judgment rendered against it and in favor of James R. Moore for $10,000. The complaint alleged that an oral contract was made between appellant and appellee on December 26, 1915, by the terms of which the appellee was employed to furnish to the appellant a purchaser for described real estate, consisting of ranches, town property in San Rafael, chattels real, live stock, and farming and ranch machinery and equipment, all situate in Valencia county, and upon terms fixed by the appellant; that it was further agreed that, in the event that appellee furnished a purchaser upon said terms on or before January 31, 1917, the appellant would pay him as and for his compensation therefor the sum of $10,000; that in pursuance of said contract and agreement the appellee, on or about January 25, 1917, procured a purchaser for said property upon said terms and conditions, in the person of the Carr-Godding Sheep Company; that said last-mentioned company was then and there ready, able, and willing to purchase said property on said terms and conditions, and tendered to the appellant full compliance with the contract made between the parties hereto, but appellant failed and refused to sell or deliver said property or pay to the appellee the said commission of $10,000.

The answer is too voluminous to state its contents in detail. It first denied all allegations contained in the complaint not specifically admitted in the answer, and then alleged three additional and separate defenses.  .

The first was to the general effect that appellee was a close corporation, whose business affairs were conducted on the advice and recommendation of Amado Chaves, because of the unfamiliarity and incompetency of the two other directors of said corporation; that Chaves and appellee occupied towards each other a relation of great confidence, and that by reason of such relation appellee was able to and did induce the appellant to make said contract by falsely and fraudulently representing that he could sell the property to Frank A. Hubbell for a price greater than appellant had been offered, and to the advantage of the appellant, and that the reasonable value of his services therefor would be $10,000, all of which he knew to be false; and that in pursuance of such contract the appellee induced the appellant to execute and place in escrow the necessary deeds, bills of sale, contracts, etc., essential to carry out the transfer of said property. It was further alleged that the appellee and the Carr-Godding Sheep Company entered into a contract by the terms of which appellee agreed and undertook to perform for the Carr-Godding Sheep Company services contrary and antagonistic to the interest of the appellant, for which appellee received the sum of $250, all without the knowledge or consent of the appellant, on account of which appellee was precluded from recovering any sum of money from appellant for services alleged to have been performed in and about the matters set forth in the complaint. The second defense was, in substance and effect, that no consideration existed for the contract of employment of appellee; that on or about January 21, 1917, and prior to the procurement of a purchaser for said property by appellee, the appellant withdrew the offer of sale and so notified the appellee; and that if any services were rendered in the premises by appellee they were of no value or benefit whatever to the appellant, the sole purpose and intention of appellee being to take an unconscionable advantage of the appellant and procure the appellant to pay to appellee an excessive commission for pretended services rendered in behalf of appellant. By

the third and last defense the appellant alleged that the agreement between the appellee and the Carr-Godding Sheep Company was not made in good faith, but was merely colorable and for the purpose of making a pre-tender offer to purchase, to the end that the appellee might force the appellant to pay said commission; that appellee agreed with said sheep company to share with it any commission extorted from the appellant, and con-sequently the said Carr-Godding Sheep Company pre-tended to tender $84,575 to the appellant, and demanded performance of the agreements placed in escrow by the appellant.

The appellee replied, denying the allegations of the answer inconsistent with the allegations in the complaint, and specifically alleging among other things, that the $250 received by him from the sheep company was for and on account of the privilege extended by him to said sheep company, to have a reasonable time in which to inspect and learn the condition of the sheep which ap-pellant agreed to sell.

The cause was tried to the court, without a jury. The issues thus before the trial court were as follows: (1) What were the terms of the agreement made between the parties hereto? (2) Was the agreement induced by the fraud of the appellee? (3) Did the appellee per-form his undertaking; and (4) did appellee forfeit his right to a commission by virtue of misconduct on his part in the premises?

The findings of fact, as such, were favorable to the appellee. The court found, in substance and effect, the following: That the oral contract mentioned in the complaint was executed as alleged therein; that appellee notified the appellant, on or about January 13, 1917, that he was negotiating with the Carr-Godding Sheep Company for the sale of said property; that a list of said property, including the prices fixed therefor was delivered by Chaves to appellee; that the number of live stock which appellant could deliver on or before January 31, 1917, was not then known, and consequently

the total price set on the property in said list amounted
to $110,000; that when negotiations were opened with
the sheep company by appellee the latter granted the
former the right to make an inspection of said property
and determine whether it would purchase the same, said
right of inspection and determination being limited to
January 22, 1917; that on the last-mentioned date the
report of the agent of the sheep company as to the con-
dition of said property, etc., had not reached the sheep
company, and, desiring additional time, it paid the ap-
pellee the sum of $250 for time to inspect said property,
etc., until January 27, 1918; that, in the event the said
sheep company made purchase of said property the $250
paid by it to the appellee should, by agreement, be ap-
plied to the consideration to be paid for the sale and
delivery of said property; that on January 22, 1917,
the said sheep company submitted to the appellee, for
transmission to the appellant, a counter proposition,
having in view the decreasing of the price of certain
lands and the elimination of others from the said sale,
which proposition appellee submitted to appellant, who
rejected the same; that the counter proposition was evi-
denced by a pencil memorandum made by the appellee
and that appellee made no effort to induce the appellant
to accept the same, but acted in good faith towards the
appellant; that appellee procured the Carr-Godding
Sheep Company as a purchaser of said property, on the
terms and conditions fixed, on January 26, 1917, and
the appellee thereupon notified the appellant of such
fact, that appellant thereupon, on said day, advised the
appellee that it would accept said Carr-Godding Sheep
Company as a purchaser, but subsequently notified the
appellee that it would not, saying that it had changed
its mind; that ''on and since'' January 26, 1917, appel-
lant was notified that the said sheep company was ready
to purchase on said terms, and that on January 28, 1917,
the appellant emphatically refused to sell; that Moore
agreed to compensate Wilcox, in whose name the escrow
papers were prepared, for his services in the premises;

that Wilcox was used in order to facilitate the appellee in making the sale, and that appellant has refused to pay the said commission to appellee. As a conclusion of law the trial court found that appellee was entitled to the relief for which he prayed.

We have set forth the findings of the trial court at some length because of the attacks made upon them by the appellant, and for the additional reason that certain propositions asserted by appellant's counsel are premised upon facts contradictory of those findings. The first proposition urged by counsel for appellant is that the appellee declared upon an oral contract, proved a written one, if any he proved, and affirmatively showed that he did not perform either.

[1] There is authority to be found to the general effect that, where a broker is employed to furnish to his principal an individual ready, able, and willing to purchase the property upon the terms fixed, the broker does not earn his commission unless he tenders to the principal the written contract of the proposed purchaser, obligating him to purchase. Those cases, reference to which will be found in the authority herein cited, proceed upon the theory that the principal must have binding assurance that the proposed purchaser will in fact become such, and that his oral declaration or agreement to purchase will not legally bind him. The rule of these cases calculates, it is said, to eliminate fraud in the transaction. It seems to us, however, that the rule for which the appellant contends ingrafts upon the contract made by the parties terms not expressly or impliedly included therein. The broker's undertaking is to furnish a purchaser ready, able, and willing to purchase on the terms specified. The readiness and ability of the proposed purchaser, as well as his willingness to purchase, may be better exemplified by his written obligation than by his mere declaration; but that hardly constitutes justification for imposing terms upon the broker's obligation not specified in the contract of employment. Instances may be conceived where the ut-

terances and conduct of the proposed purchaser would as effectually, at least, demonstrate the capacity and willingness of the proposed purchaser to complete the bargain. Thus, if the proposed purchaser, in the presence of the principal, tendered the purchase money to the principal, and then and there made demand for execution and delivery of the title papers, the rule for which appellant contends would apply in that case, we apprehend, and it could as well be contended that the broker failed to perform his undertaking. The better reasoned cases, said to constitute the weight of authority, hold to the contrary of appellant's contention, and with them we agree. Thus, in 2 Mechem on Agency (2d Ed.) § 2431, it is said:

"When a purchaser is deemed to be 'found' or 'produced,' within the meaning of this rule, is a question upon which there is some difference of opinion. It may arise under either of two different sets of circumstances: (1) Where there was a buyer involved with whom it is contended that the principal should have dealt, though he did not do so. (2) Where there has actually been a sale, and the broker contends that he 'found' the purchaser. * * * With reference to these questions it may be said: (1) If the broker has obtained from a proper person and delivered to his principal a written contract to purchase, or, since he may not be authorized to sign a written contract, a written offer to purchase which the principal can immediately turn into a written contract by accepting it, he would ordinarily be deemed to have performed his undertaking. (2) When the broker has brought forward, or designated or put the principal into communication with, a suitable person to whom the principal may sell in the ordinary course of business, he has, by the weight of authority, performed his undertaking, even if, through no fault of the brokers, the buyer is not accepted. * * *"

In 4 R. C. L. "Brokers," § 48, it is said:

"A broker and his employer have a right of course to provide in their contract of employment that the broker shall not only find a customer but shall also procure from such individual a valid agreement in writing which will take the case out of the statute of frauds. * * * But according to the sounder and preferable view, unless the contract of employment expressly stipulates to the contrary, the procurement of a binding written contract between his employer and his customer is not necessary to a complete performance of his duties on the part of the broker, provided that the surround-

ing circumstances are such that the employer is in a situation to execute it himself."

Authorities found in the notes to the foregoing text fully support this view. The appellee found a proper purchaser with whom the appellant might have done business, had it so desired. He fully performed his undertaking in so far as this proposition is concerned. The oral contract was made on or about December 26, 1916. The list of property and the prices for which appellant agreed to sell the same, of which the appellant apprehended it could deliver on or before January 31, 1917, were delivered on or about the time of the making of the oral contract. On January 2, 1917, the escrow papers, including instructions to the bank, were executed. Exhibit C, being the agreement between the appellant and Wilcox and his assigns, constituted in effect, a bill of sale for sheep and cattle. It fixed the price per head of said live stock and the approximate number to be sold and delivered, but recited that the appellant " shall have the right to more or less, as the count may determine." The delivery of said property was fixed at a convenient place on said ranches of appellant. We understand that the prices fixed and the terms named in this bill of sale were identical with those named in the written memorandum delivered by Chaves to appellee for the guidance of the latter. We also understand that the total prices of the minimum quantity of property which appellant anticipated it owned and could deliver on or before January 31, 1917, to the proposed purchaser, would amount to $84,575, the amount specified in the instructions to the escrow agent as necessary to lift the escrow papers.

With these facts in mind we proceed to the contention of the appellant. He urges that the escrow papers were ineffective until the alleged condition precedent; i. e., the payment of $84,575 had been made to the bank by Wilcox or his assigns, who in this case, we presume, would be the Carr-Godding Sheep Company. We entertain no doubt as to the correctness of the contention

that the purchaser was not entitled to the evidence of title to said property, then reposing in escrow, until at least $84,575 had been paid in at the bank, the escrow agent, for the credit of the appellant. But we fail to observe the materiality of that contention and fact here. If it is urged as a reason why the appellee failed to prove performance of his undertaking, the answer is that the court found to the contrary. The court evidently ascertained from the whole transaction that the intention of the parties was that Moore was to obtain some one ready, able, and willing to purchase the property, at the prices fixed, whereupon delivery of such real estate and such live stock as appellant was in a position to deliver and was required to deliver under the terms of the various instruments in evidence, was to be made at the ranches of the appellant, and simultaneously therewith paid for by the said purchaser. At all events it is clear that the court must have concluded, in order to find as he did find, that the agreement requiring the payment of the $84,575 to the escrow bank was dependent, upon the delivery of at least property of a fixed valuation of that sum. Clearly the court must have concluded that the various transactions between the parties evinced that intention. While an examination of the escrow papers alone might not justify that impression, we have no doubt that the impression or conclusion is justified by the entire transaction. It would seem clear that it was not the intention to require the proposed purchaser to pay $84,575 to the escrow bank for paper evidencing title to property which had not been delivered to the purchaser.

It is true that the bank was not authorized to deliver the escrow papers unless it had received that sum; but we apprehend that, had the appellant carried out the sale and delivered property of the value say of $50,000, the appellant could have been required to execute the evidence of title thereto, independent of the effect of the provision requiring the payment of the $84,575. On the other hand, we are certain that no right to the par-

ticular escrow papers existed in Wilcox or his assigns until that sum had been paid, but that such fact does not affect the duty of appellant in the premises to have made delivery of the real and personal property it offered for sale. The practical consummation of the sale in pursuance of the understanding of the parties would be carried out by the delivery of the property which appellant agreed to sell, in accordance with the terms of the agreement, whereupon, or simultaneously therewith, the purchaser would pay to the escrow agent $84,575 and the additional sum, if any, to the appellant itself; or, in the event the purchaser paid the total sum fixed as the consideration price for the property actually delivered, to the appellant, it would become the duty of the appellant thereupon to execute evidence of title thereto, notwithstanding that a deposit or payment of $84,575 had not been made to the escrow agent. At all events the right of the purchaser to the property depended upon the quantity of property delivered and the payment therefor, but this could not be ascertained nor required until the delivery was either made or in process of being made; and the failure and refusal of the appellant to make the deliveries to the Carr-Godding Sheep Company, evidenced by its refusal to proceed with the sale after accepting the said company as a purchaser, put it out of the power of the proposed purchaser to make the necessary payment. It will be observed that, while the purchaser might procure from the escrow agent the title papers to the property purchased by him, upon the payment of $84,575 within the time specified, the duty to make delivery of the property was still incumbent upon the appellant, and necessarily a condition precedent to the fulfillment of appellant's obligation in the premises. Manifestly the trial court must have taken this view of the matter in order to make the findings it did make in this case, and there is substantial evidence to support that theory.

The trial court found that the Carr-Godding Sheep Company made no demand upon the appellant for per-

formance of the contract to sell said property; that it demanded performance upon the part of Wilcox and appellee on January 31, 1917; that prior thereto appellant notified appellee, and appellee notified said sheep company, that appellant did not desire to sell said property, but appellant did not attempt to withdraw the escrow papers; that appellant advised the escrow agent, on January 27, 1917, not to make delivery of the escrow papers unless the said sum of $84,575 was deposited with it unconditionally; that neither appellee, nor the sheep company, nor Wilcox, nor his assigns, on or before January 31, 1917, paid any sum to said bank or demanded receipt and delivery of the escrow papers, nor were said papers ever surrendered by said bank; that on January 31, 1917, Wilcox executed in blank an assignment of his rights in the premises and deilvered same to appellee, and authorized appellee to insert therein the name of said sheep company, but this the latter refused to permit to be done, and thereupon appellee, at the request of said sheep company, inserted therein his own name, for the purpose of becoming the assignee of the rights of Wilcox, but that no consideration therefor passed as between Wilcox and appellee.

By virtue of these findings appellant contends that appellee realized that he was required to establish a contract other than the one evidenced by all of the writings heretofore mentioned, and made demand upon appellant for the performance of the escrow agreement of January 2, 1917, and not for performance of the oral contract of December 26, 1916. The demand for performance, it is true, referred to the escrow papers, but was made in this form:

"I am ready, representing my purchasers, to receive and pay for said live stock and lands in accordance with the terms of said escrow instructions.  *  *  * "

The demand for the performance made by the sheep company upon appellee and Wilcox advised that the said sheep company stood ready to receive the same,

"and will expect you to deliver to me as per our agreement with you." The appellant contends that the agreement to which the sheep company referred therein was the agreement as stated in Exhibit Q, wherein appellee was to endeavor to have the purchase price of certain of the lands reduced and other property eliminated from the sale; but this is contrary to the general findings of the trial court. The court found that the purchaser was ready, able, and willing to purchase on the terms fixed by the appellant, and those terms were different from those stated in Exhibit Q, and consequently the proposition submitted by appellant is premised upon facts contradictory of the findings of the court.

In reply of appelle, in answer to alleged new matter in the answer of appellant, it was stated that the purchaser was ready, able, and willing to purchase on the terms fixed by appellant, and "did deposit said amount with the escrow agent." The court found that no such deposit was made by the purchaser. The appellant, consequently, argues that appellee did not perform his contract. Evidently the trial court regarded the failure to make the deposit as no legal impediment to the right of the appellee to recover his commission, holding, necessarily, that the appellee performed his undertaking without showing that the deposit was made. Whether this was due to the fact that the intention of the parties, as gathered from the entire transaction between them, was that delivery of the property was a condition precedent to the requirement making such deposit necessary in order to obtain the title papers, or because no deposit was required on account of the breach of contract on the part of appellant, is immaterial, for in either event the proposition became immaterial.

[2] Findings of fact numbered 4 to 7, inclusive, are attacked by appellant's counsel on the ground that there is not a particle of evidence to sustain them. Such is not the case. There is ample evidence to support those findings, and consequently they are conclusive on this appeal. The evidence thereon is in conflict, but

it was the province of the trial court to determine the truth of the matter. Having done so, and there being substantial evidence to support the same, we shall not disturb them. The second proposition contained in the brief of the appellant constitutes an attack upon the action of the trial court in refusing to find that the appellee procured the contract of employment by fraud.

[3] The appellant submitted to the trial court its version of the existence of the alleged fraud on the part of the appellee, by tendering requested findings including the same, but the trial court refused said requested findings. It was contended at the trial that the appellant was engaged in negotiations with the Carr-Godding Sheep Company for the sale of said property at a time prior to the making of the contract with appellee, and that appellant had been offered by said sheep company $80,000 or $85,000 for said property; that said negotiations were terminated by appellant upon the making of the contract with the appellee, because the latter assured the appellant that the purchaser he had in mind was Frank A. Hubbell, whom appellant knew was financially able to carry out the terms of the sale, if he so desired; that the terms upon which appellee was to negotiate a sale to said Hubbell were more favorable than those being negotiated between appellant and the Carr-Godding Sheep Company, and that the appellant acted upon said misrepresentations. The inherent fault of the contention lies in the assumption of the truth of facts inconsistent with the findings of the court, or its action in the premises. It was asked to find that such fraud existed, but refused to do so. Amado Chaves testified to facts from which the conclusion for which appellant contends might have been drawn by the trial court, but the appellee testified to facts contradictory to the facts upon which appellant relies. Consequently a conflict arose as to the truth of those facts, and that conflict having been resolved against appellant, and there being substantial evidence to sustain the contrary

theory, the refusal to find as appellant requested was correct.

[4] Appellant also contends that, even if the appellee proved the existence of the contract of employment as alleged in the complaint and full performance thereof on his part, he is nevertheless precluded from a recovery in this case because he accepted compensation from the Carr-Godding Sheep Company and promised to perform and endeavored to perform services for said sheep company, inconsistent with his duty to the appellant, and that he had an interest in the purchase, all without the knowledge or consent of the appellant. It is a familiar principle of law that the liability of the agent to his principal is to be determined by ascertaining the nature and scope of the duty owed to him. 1 Mechem on Agency (2d Ed.) § 1187. Loyalty is his first duty. Section 1188, Id. He will not be permitted to serve two masters, nor be placed in a position of temptation adverse to the best interests of his principal. Injury to the principal in such cases is not the test. Section 1199, Id. He must disclose to his principal the fact of any interest of his own which may be antagonistic to the interests of his principal. 2 Mechem on Agency (2d Ed.) §2411. The broker ''who, in disregard of his duty, conceals adverse interests, or secretely enters into the service of, or himself becomes, the adverse party, forfeits his right to commissions. * * *'' Id. § 2477. These are general principles which require no additional authority to support them. But they are not applicable to the facts in the case at bar.

The appellant urges, first, that the finding of the court to the effect that the only consideration for the payment of the $250 to Moore, the appellee, by the Carr-Godding Sheep Company, was the privilege granted by appelle for further time to inspect the property and determine whether it would purchase same or not, is not only not supported by any evidence but contradictory of the evidence. On cross-direct examination Clark M. Carr

testified substantially to the effect that said sum of
money was paid to appellee for the services of the lat-
ter to be rendered in endeavoring to reduce the purchase
price of certain of the property and eliminate other
property from the sale and furnish an abstract to the
property. On the same examination he also testified
that the said money was paid irrespective of the said
agreement ''to hold the trade''; the appellee stating
at the time ''that he would have to have some money
to hold this trade; we paid it to Mr. Moore; didn't
know where it was going, or anything about it.'' The
appellee on direct examination testified that he received
$250 from said sheep company. On cross-examination
he testified as follows:

"Q. Now, Mr. Moore, for what was the $250 paid to you by
the Carr-Godding Sheep Company on the 22d of January, 1917?
A. It was paid to me, Mr. Field, for the privilege I extended
them of having until—the date mentioned there—the 27th,
exclusive option to purchase to and until January 27, 1917.
Q. You undertook to give the Carr Godding Sheep Company
on the 22d of January, 1917, an exclusive option to purchase
the property of the Mazon Estate, Incorporated, at a price un-
til the 27th day of January, 1917, although you say at that time
that you had no exclusive right to sell, is that a fact? A.
No, sir. The fact is that they had the option to purchase it
until that time so far as I was individually concerned or
during that period of time while their man was still out ex-
aming the property; that I would not present the matter
to any one else or take it out of their hands; in other words,
that they should have that length of time to get their report
on the property."

The foregoing quotation disposes of appellant's con-
tention adversely. There is evidence in the record, which
was apparently relied upon and believed by the court,
sufficient to sustain the finding of the court that the
only consideration for the payment of the $250 was the
privilege granted by appellee to the sheep company.
The misconduct of appellee in the premises, if miscon-
duct existed, must therefore be attributed to him by
virtue of his conduct and agreement respecting the en-
deavor to reduce the purchase price of certain of the
property, eliminate the San Rafael town property, and

if the latter could not be eliminated then to become chargeable with its valuation on his own account. The testimony of appellee would seem to indicate that rather than see the deal fall through he was at least willing to have the Carr-Godding Sheep Company make the complete purchase, and then either find a purchaser at another time for the San Rafael property, or, failing in that, take over the same himself. He says in effect that to this he agreed, or at least "arrangements" to that end were made between him and the said sheep company. Thus on the cross-examination of appellee appears the following:

"Q. Then you had a collateral agreement with the Carr-Godding Sheep Company, whereby you agreed that if they would take this property from the Mazon Estate, Incorporated, under these papers, that you would either find them another purchaser for the San Rafael property for the same price, or take it yourself. A. Yes, sir. Q. And that was prior to the time that you demanded performance by the Mazon Estate, Incorporated? A. Yes; it was prior to January 26th, Mr. Field."

He also testified that Mr. Carr agreed to give him several years to pay for it, but that Mr. Carr would try to sell it to other people. In the meantime, however, during the time appellee endeavored to make a sale of that particular property to some third person, he was advised that Mr. Carr believed that he was in negotiations with a party who would purchase the property, and appellee consequently discontinued his endeavors and negotiations to sell said property. Carr testified that his company did not, in the first instance, desire to purchase the San Rafael property, and advised Moore that he, the witness, would endeavor to make a sale of that property; that subsequently appellee reported that the said property could not be eliminated and thereupon the sheep company decided to take the property as offered by the appellant, "in the meantime trying to dispose of the San Rafael property ourselves." From all his testimony on this proposition it would appear that appellee and the witness discussed the proposition

that, if the witness could not dispose of the San Rafael property, appellee would take it off their hands by purchasing it himself, or finding a purchaser for it, but that no definite arrangement or agreement was made between them having that effect, the sheep company knowing that appellee was not in a financial position to take over that property and "we considered it was a matter of further negotiation as to what kind of a trade we would make with Mr. Moore." The court, in the light of the testimony, was warranted in concluding that no contract was made or arrangement perfected whereby appellee agreed to purchase said property for himself or find a purchaser for it, and consequently there is no premise for the argument made by appellant in this respect. What the court found was that appellee "at no time entered into any agreement or stipulation or assumed any position with relation to said property contrary or in hostility to the rights or interests of the defendant under the aforesaid agreement between them." The simple fact that appellee submitted a counter proposition to appellant on behalf of the prospective purchaser in no way constitutes misconduct. According to the evidence and the finding of the court he made no effort to influence the acceptance of that proposition by the appellee. He was but a mere messenger, and the trial court was not in error in holding that his conduct in this regard did not forfeit his right to the commission he had earned by procuring a proper purchaser.

It is again argued, upon another theory, that appellee was guilty of misconduct, in that he accepted $250 for the inspection privilege granted by him to the Carr-Godding Sheep Company. The appellant says:

"Assuming that the plaintiff was employed by the defendant to sell its property for an upset price, it was his duty to secure for the defendant the best price which he could get and to account to the defendant for the full amount of that price, whatever it was. He could not in 'good faith' pocket $250 of the purchaser's money without defendant's knowledge on any pretense whatever."

It is not contended that appellee was empowered to grant an option, exclusive or otherwise, to purchase said property, but rather counsel assumes that he had no such right. Consequently the so-called option had no legal binding effect. The price of the property was fixed by appellant, and the total amount which it might receive under its contracct with the appellee depended uppn the quantity of property delivered by it to the purchaser. We are unable to perceive how appellee can be said to have placed himself in a position antagonistic to the interests of the appellant in the premises by receiving said sum for said purpose. The agreement and receipt of the money tended to the consummation of the sale and was calculated to redound to the interest of the appellant, in that it constituted an incentive to the Carr-Godding Sheep Company to consummate the purchase. We do not think the court erred in holding that the action of the appellee in this regard did not constitute misconduct, nor that such conduct contravened any established policy of the law.

[5] Over objection of counsel for appellant, the court admitted testimony tending to establish that it was an established custom among live stock men to first obtain the prices of the live stock, which was the subject of the negotiations, and then go upon the ground and make an inspection of said stock, after which the proposition was either accepted or rejected; the witness testifying that "the seller can't expect the buyer to buy stuff without seeing it." The objection to such testimony was based upon the ground that "the plaintiff has alleged an absolute contract on the subject." The court admitted such evidence on the theory that it was material to the proposition as to whether the appellee was engaged in serving two masters. The court found as a fact that such custom existed in Albuquerque, and some reference is made by appellant's counsel to the effect that the finding is not supported by substantial evidence. The testimony of the only witness on this subject is not entirely satisfactory proof of the existence

of the said custom, but is, we believe, sufficient to sustain the finding.

It is also argued that such evidence was inadmissible, because it tended to ingraft upon the contract between the parties hereto new terms or conditions, or alter or modify the plain and unequivocal terms of the contract. The contract is silent as to this subject, viz., right of inspection, but the contention is without merit, because such evidence was not admitted for any such purpose; the court admitting it solely for the purpose of throwing light upon the proposition as to whether the appellee was serving two masters or not, and that proposition is not argued here by appellant. It requires no citation of authority to support the proposition that, where evidence is received for a stated purpose, the fact that it is inadmissible for a different purpose does not render the action of the court erroneous.

Under point 5 the appellant argues the merits of the case as the facts appear to him. The facts in this case are established on this appeal by the findings, where they are supported by substantial evidence. We are not disposed to discuss, therefore, much that is argued by counsel for appellant under this point. He does, however, insist that the findings of the court, in some particulars, are inconsistent and repugnant, and that any finding of fact inconsistent with appellee's right to recover is fatal to his case on this appeal. Findings of fact numbered 4 to 7, inclusive, are said to be inconsistent with findings submitted by appellant and adopted by the court numbered 12 to 15, inclusive. Finding numbered 4 was to the general effect that appellee procured the Carr-Godding Sheep Company as a purchaser, and so notified the appellant; finding 5, that appellant advised appellee of its acceptance of said purchaser, and subsequently of its refusal to sell; finding 6, that on and since January 26, 1917, appellant was notified that the purchaser was ready to purchase on the terms and conditions fixed; finding 7, that on January 28, 1917, appellant advised the appellee that it would, under no

circumstances, sell and convey said property to said sheep company or any purchaser procured by appellee; finding 12, that the sheep company never demanded of appellant the performance of said contract; finding 13, that on January 31, 1917, written demand for performance was made by said sheep company upon Wilcox and appellee; finding 14, that prior to January 31, 1917, appellant notified Moore, the appellee, and Moore notified the said sheep company, that appellant did not desire to sell its said property, but did not attempt to withdraw the escrow papers, and on January 27, 1917, appellant advised the escrow agent that it must not deliver said papers unless $84,575 was deposited with it unconditionally; and finding 15, that no one paid the escrow agent said sum on or before January 31, 1917, or made demand for said papers. We fail to observe any conflict between these findings. Many of those findings are wholly immaterial to the rights of the parties in this case. As we have said, the trial court evidently concluded that the purchaser was furnished by appellee, accepted by appellant, and then rejected by appellant, and consequently all that subsequently transpired was immaterial, except, perhaps, in so far as it tended to exhibit a practical construction of the contract by the parties. Consequently the fact that no demand for performance was made directly upon appellant, that the money was not deposited to take up the escrow papers, that appellant revoked appellee's authority to make a sale, and that the escrow agent was advised not to deliver the escrow papers unless said sum was deposited with it without condition, may be taken as true; and this the trial court did without in any wise prejudicing the rights of the appellee, or in any wise affecting the correctness of the action of the trial court. That these facts might have been sufficient to justify the trial court in concluding that appellee was not entitled to recover may be conceded; but it did not so conclude.

We have examined the contention of appellant's counsel that the trial court should have accepted his proposed findings numbered 1, 4, 5, 6, 8, 9, 10, and 17. Those proposed findings constitute the appellant's version of the facts in this case, and are opposed to those findings made by the court. Of course, it was the province of the trial court to determine the truth of the facts in evidence, and having done so, and those findings being supported by substantial evidence, they are conclusive here, and ample justification for the refusal of the court to make the findings requested by the appellant.

For the reasons stated, the judgment of the trial court will be affirmed; and it is so ordered.

PARKER and ROBERTS, JJ., concur.