20 P.(2d) 285

**ZAPF v. HAYES et ux.**

No. 3719.

Supreme Court of New Mexico.

Dec. 8, 1932.

Rehearing Denied March. 27, 1933.

Simms & Botts and Henry G. Gatling, all of Albuquerque, for appellants.

George S. Downer, of Albuquerque, for appellee.

NEAL, J.

This action arose out of the sale of the Hayes ranch in Bernalillo county, by the appellants, to J. B. Jones and his wife. Appellee, a real estate broker residing in Bernalillo county, demanding, and appellants refusing to pay a broker's commission on the sale.

The complaint alleges that appellee is a real estate broker of the city of Albuquerque, and as such he procured a purchaser for the Hayes ranch, which at that time belonged to the appellants in this cause, and made a contract of sale of the ranch to J. B. Jones and his wife, the trade being conducted between Mrs. Jones, the appellants herein, and the appellee, subject to the approval of Mr. Jones. On his return to Albuquerque a few days later, it is alleged that Mr. Jones fraudulently and with intent to deprive the appellee of his commission for the sale of the property, refused to approve the contract of sale or exchange entered into, and thereafter, immediately, and in order, it is alleged, to procure a commission for another broker named McDuffie, refused to approve the contract, made by his wife, and called the trade off, and that the appellants fraudulently and with intent to avoid paying the appellee his commission, conducted the sale of the property through the said McDuffie, and that through the efforts and services of the appellee rendered to appellants, the property was sold to Jones for $8,600.

The appellants, answering, denied liability to appellee for said commission, denied all allegations of fraud or fraudulent intent, or any intent to defeat appellee in the collection of his commission, alleged his honesty and good faith in all of the transactions connected with the sale of the property, admitted the sale to the Joneses, and admitted the execution of the first contract set out in the complaint by the appellants and the wife of J. B. Jones.

The appellant requested of the trial court specific findings of fact and conclusions of law, and the court made findings of fact requested by the appellants, as follows:

"1. That the property known as the Hayes ranch was never listed by the defendants with the plaintiff real estate broker for sale or trade.

"2. That the plaintiff was never employed by the defendants to procure any sale of defendants' ranch.

"3. That the agreement dated January 10, 1929, plaintiff's Exhibit 1, was entered into subject to the approval of J. B. Jones who was then absent from the city of Albuquerque. That the said J. B. Jones never approved said agreement and that the same never became binding."

"5. That the said J. B. Jones notified the plaintiff in writing by letter dated January 17, 1929, that he would not approve said agreement of January 10, 1929, plaintiff's Exhibit 1; and that the said J. B. Jones several days prior thereto over long distance telephone with his wife, Mrs. J. B. Jones, who at the time was in the office of the plaintiff, notified the plaintiff through the said Mrs. J. B. Jones

that he did not approve the said agreement of January 10, 1929.

"6. That the plaintiff, through his agent Mr. Atwater, upon the receipt of the letter from J. B. Jones, notified the defendant Hayes that Mr. Jones has refused to approve said agreement and that said deal was off, and that at that time the defendant Hayes instructed the said Atwater to burn and destroy the said agreement of January 10, 1929.

"7. That the plaintiff or his agent did nothing further and made no further efforts to consummate a sale or trade of the Hayes property after plaintiff's agent, Atwater, notified defendant Hayes that Jones had refused to approve said agreement of January 10, 1929, plaintiff's Exhibit 1."

"9. That thereafter McDuffie's agent, T. W. Plunkett, showed defendants' ranch to the said J. B. Jones and showed defendants' ranch to the said Mrs. J. B. Jones, and thereafter sold said ranch to the said J. B. Jones for a consideration of $8,600, being paid as follows: $2,000 cash, $3,000 from the proceeds of a first mortgage thereon, and $3,600 by a second mortgage in favor of the said Hayes, payable $750 per year."

"11. That the said agreement of January 10, 1929, plaintiff's Exhibit 1, was for the proposed exchange of the properties of the defendants, Hayes, and of the said J. B. Jones, and that said exchange of properties was never consummated. That the said sale of the Hayes ranch through the broker, McDuffie, was an outright sale of the said Hayes ranch to the said J. B. Jones, and was not a trade or exchange of the property."

"14. That the said sale of the defendants' ranch to the said J. B. Jones was made in good faith by the defendants, and that there was no fraud on the part of the defendants in carrying out said sale, and that the said defendants did not attempt to defraud the plaintiff out of any commission."

"20. That the plaintiff has not proved that there was ever any fraud whatever on the part of the defendants or on the part of the said J. B. Jones in connection with the said sale of the Hayes Ranch to the said J. B. Jones."

These findings, requested by the appellants and adopted by the court, were not excepted to by the appellee, and from our examination of the record, we think the findings were supported by substantial evidence.

The court found, in addition to the findings of fact stated above, in its opinion filed in the case, first, that plaintiff was the procuring cause of the sale of the ranch from appellant Hayes to J. B. Jones and his wife, and that the second transaction between the parties culminating in the final sale of the property from appellants to Jones followed so closely upon the heels of the first transaction (meaning the contract for exchange of property executed by the wife of Jones, and these appellants, on January 10, 1929), was in truth and in fact one and the same transaction, and concluded that the first procurer of the purchaser, (meaning appellee) was the procuring cause, and "that Mrs. Jones was primarily interested

in the ranch through the efforts of the plaintiff, and wanted to buy it; the deal fell through because her husband objected to the matter of terms," and later in the opinion, the court says: "From a common sense standpoint, it occurs to me as if the plaintiff got these people interested in the purchase of the ranch and right on the heels of the failure of the first negotiations, the second was put through successfully," and concluded that the appellee was entitled to judgment for the sum of $430 against the plaintiffs.

To these findings and conclusions by the court, the appellants reserved their exceptions.

The first assignment of error by the appellants here is: "The judgment is erroneous when applied to the facts as found by the court."

This assignment of error clearly presents for our consideration the correctness of the judgment under the facts found. It appears from findings of fact numbers 1 and 2, supra, (a), that the property was never listed for sale by appellants, Hayes and his wife, with the appellee, Zapf, and (b) that the appellee, Zapf, was never employed by the appellants, Hayes and his wife, to procure any sale of the defendants' ranch.

This naturally suggests the question: Can a real estate broker with whom property has never been listed for sale, and between whom and the owner of the property sold there has never been any contract of employment, demand and recover at law his commission for services rendered, if any?

In 9 C. J., page 554, paragraph 58, the doctrine applicable to this question is laid down in the following language: "To entitle a broker to compensation, he must have been employed to negotiate the transaction in connection with which his services were rendered. In the absence of such employment, or in other words, where the broker acts as a mere volunteer, he is not entitled to compensation, although his services are the efficient cause of bringing the parties together and result in a sale or other contract between them. The time of employment is immaterial if the broker was actually employed, but a promise to pay for past services voluntarily rendered by a broker is not binding unless such promise is based on a present consideration."

In support of this text, the author cites many and numerous cases from almost all the states. We have not examined all of these cases, but the doctrine here stated seems well supported by the authorities.

In 4 R. C. L., Title, Brokers, paragraph 43, the author states the doctrine in the following language: "As it takes two to make a bargain, a broker is not entitled to be compensated for his services unless they were rendered pursuant to the express or implied request of his employer. To warrant a recovery upon his part he must have been actually employed by the person he is seeking to hold liable, for otherwise there would be no legal basis for his claim to compensation notwithstanding the fact that a purchaser may have been found through information furnished by him. The calling of a broker is not prefer-

red in the eye of the law to that of any other occupations, and he is no more entitled to remuneration for services voluntarily rendered without any employment, express or implied, than any other member of the community. While a contract of employment may be implied from subsequent acts of ratification on the part of the alleged principal, to warrant the inference of a previous request, the owner must say or do something tending to prove that he accepted the broker as his agent in the matter—something more than merely selling to the party whom the broker, while acting as a volunteer, brought to him."

Among the many cases deciding this principle, the case of Geier v. Howells, 47 Colo. 345, 107 P. 255, 256, 27 L. R. A. (N. S.) 786, seems peculiarly applicable to this case, especially in view of the testimony of Mr. Atwater as to his first meeting with Mr. Hayes, while he and Mrs. Jones were out looking at other property. He said: "As we went down the pavement, we came to Mr. Hayes' ranch, We went in and I asked Mr. Hayes the price of the ranch, stepped into the dining room, as I remember it, and he said nine thousand dollars. We looked the thing over, went into it considerably, went over the place, and she (referring to Mrs. Jones) was quite pleased with the property, quite interested in it, etc."

And later:

"Q. Did you know who owned the ranch at that time? You didn't even know the name of the owner. You didn't know Mr. Hayes then, did you? A. I don't believe I did."

"Q. You just walked in, both of you together, and asked Mr. Hayes how much he wanted for the ranch, and he priced it at nine thousand dollars? A. That's right."

In the Colorado case, supra, the court said: "To entitle a real estate broker to commission, a contract of employment is necessary. When a broker asks and obtains from the owner the price at which he is willing to sell certain real estate, that does not of itself establish the relation of principal and agent between the owner and the broker. Castner v. Richardson, 18 Colo. 496, 33 P. 163. It is also the law that a broker who, without employment or authority so to do, participates in a transaction resulting in the sale of property to another, is not entitled to a commission. Merrill v. Lathan, 8 Colo. App. 263, 45 P. 524. The fact that plaintiff may have found a purchaser ready and willing to buy the property, and who subsequently did purchase it from the defendant, does not impose a liability upon the latter to pay commissions unless it appears that plaintiff was employed by the defendant to make a sale of the premises. Castner v. Richardson, supra; Clammer v. Eddy, 41 Colo. 235, 92 P. 722. The burden was upon the plaintiff to establish that he was employed by the defendant to make a sale of his property, which was sold to Mrs. Oakes."

No decision of this court directly passing upon this question has been called to our attention, though the case of Majors v. Kohlhousen, 33 N. M. 529, 270 P. 896, bears somewhat upon the principle, and the case of Pecos Valley Immigration Company v. Cecil, 15 N.

M. 45, 99 P. 695, 696, in discussing the right to a commission where the broker has been the procuring cause of the sale, quotes with approval the conclusion of law of the trial court in that case in the following language: "The court also found, as a conclusion of law, that: 'The facts of the case do not bring it within the decisions which held that a sale by a party direct leaves the factor's right to the commission intact, where the latter has furnished the customer and has thus been the procuring cause of the sale. Such cases presuppose and assume a relationship of principal and agent, which the court in this case finds did not exist.'"

We therefore think that the trial court in this case, having found that the property was never listed with appellee for sale, and that no contract of employment had ever been entered into between the appellee and the appellant looking to the procuring of a sale of the property, should have rendered judgment for the appellants, for while it is clear that such a contract may be express and either written or oral, or may be implied from facts and circumstances, and conduct of the parties, yet we are clearly of the opinion that to establish the relationship of broker and principal so as to entitle the broker to compensation for his services, there must be some kind of agreement for employment.

The learned trial judge proceeded upon the theory that appellee, being the procuring cause of the sale of this property, was entitled to their commission, and this is the law of this jurisdiction; Jackson v. Brower, 22 N. M. 615, 167 P. 6, Bunton v. Campredon, 24 N. M. 314, 171 P. 142, Stacey v. Whalan, 33 N. M. 577, 273 P. 761, Las Vegas Realty & Insurance Company v. Sparks, 29 N. M. 77, 218 P. 345; but, as heretofore noted, such cases presuppose and assume that the relationship of principal and agent existed.

We therefore conclude that the district court erred in rendering judgment for appellee.

In view of this conclusion, we do not deem it necessary to determine the other questions presented by this record.

The cause is therefore reversed, and remanded with directions to proceed in accord herewith.

BICKLEY, C. J., and WATSON, SADLER, and HUDSPETH, JJ., concur.