359 P.2d 942

C. A. HARP, Plaintiff-Appellant and Cross-Appellee,

v.

W. J. GOURLEY, W. S. Ranch Co., a Corporation, and Maxwell Land Grant Company, a Corporation, Defendants-Appellees and Cross-Appellants.

No. 6530.

Supreme Court of New Mexico.

March 3, 1961.

Modrall, Seymour, Sperling, Roehl & Harris, Allen C. Dewey, Waldo Spiess, Albuquerque, for appellant.

Seth, Montgomery, Federici & Andrews, Santa Fe, for appellee.

On Motion For Rehearing

PER CURIAM.

Upon consideration of Motion for Rehearing, the original opinion heretofore filed is withdrawn and the following is substituted therefor.

MOISE, Justice.

This is a suit to collect a commission on the sale of a ranch. The right to the commission is based upon a letter from defendant Gourley to the plaintiff, dated August 6, 1945, the material portions of which read as follows:

"Finally, I think we have closed the deal for the 90,000 acres on the lease-purchase basis, however as far as the purchase end is concerned, don't know when that will take effect owing to Holland has instigated a law keeping directors from having a meeting and disposing of any of their property, but the best of all is that we got the lease for ten years.

"Maxwell Land Grant Company would like to have you sign the enclosed letter, which I have already signed, and return same to them in the enclosed envelope.

"As per our understand——, I am to take care of the commission, as, if, and when we are able to get title on this acreage.

\*   \*   \*   \*   \*   \*

"It is the writer's opinion that we will eventually get the entire grant. I think it is also the opinion of Mr. Van Houten and Mr. Van Lint."

The "enclosed letter" referred to in the letter above was addressed to The Maxwell Land Grant Company, was signed by plaintiff and defendant Gourley, and reads as follows:

"The transaction embodied in my written lease agreement with you dated July 5, 1945, which agreement contains certain provisions respecting the possible sale and conveyance to me of the land therein described, was negotiated largely by Mr. C. A. Harp. I have arranged with Mr. Harp to take care of his commission on this transaction, and this will confirm my understanding with you that you are not to pay any part of the commission." (Note that lease was actually dated August 2, 1945, though reference is July 5).

The letters resulted in the following manner. Defendant Gourley, in the year 1945, was a ranch operator and the plaintiff was his foreman or manager. The Maxwell Land Grant Company was a corporation whose directors lived in Holland and one Victor L. Van Lint was its local manager. The company was the owner of large tracts of ranch land. In May, 1945, Mr. Van Lint gave the plaintiff a list of the various holdings of the company in New Mexico, and he was told to get all the

prospective buyers or lessors he could, and the directors in Holland would establish a price. Plaintiff stated that he expected a "fair commission" but he also stated that he had nothing concerning a commission in writing and that all that was said about his commission was to the effect that Mr. Van Lint stated that if he "could find some buyers" they would probably give him a commission; that it would be up to the directors, and plaintiff stated he was "just trusting the Maxwell Land Grant Company would shoot square."

Immediately thereafter plaintiff, who knew defendant Gourley was interested in increasing his ranch holdings, told Mr. Gourley about the possible availability of the property in question, took him and showed him the property, and introduced him to Mr. Van Lint. Thereupon, a written agreement dated August 2, 1945, was negotiated between Mr. Van Lint on behalf of the Maxwell Land Grant Company and the defendant Gourley which was denominated a lease but contained two parts. Part I was a lease on the property for a term expiring December 31, 1955. Part II of the lease was in the nature of an agreement by Gourley to pay $4 per acre in cash for the land upon delivery of warranty deed thereto. The instrument stated that this promise on the part of Gourley was made notwithstanding the inability of the attorneys in fact for the owners to bind them, but:

"said agents and attorneys in fact shall endeavor to obtain from the Lessor a warranty deed to be made, executed and delivered by the Lessor acting through its proper officers and conveying to the Lessee in fee simple the land and real estate above described, all upon the following terms * *"

Then follow the price and other terms and conditions and the following:

"If it should be impossible or impracticable for the Lessor to make such conveyance prior to the termination of this lease, or if the Lessor should be unwilling to make such conveyance upon the terms above specified, upon the termination of this lease, then all the provisions hereof concerning the possible sale and purchase of said lands shall be automatically abrogated.

"This instrument shall not be construed as obligating the Lessor to make conveyance or to sell or convey said land and real estate, or as imposing any personal liability or obligation upon said agents or attorneys in fact, or either of them."

The letters quoted above were written at the time of the execution of the lease, the letter to Maxwell Land Grant Company being written at the request of the attorney for the company. In addition, defendant Gourley stated that his agreement to pay

the commission contemplated $1,000, which amount he told plaintiff he would pay; however, plaintiff denies that this figure or any amount was ever mentioned or agreed upon.

Gourley went into possession of the property leased, and retained possession for the entire lease term. There followed certain efforts to negotiate the purchase under Part II of the lease; however, without success, and accordingly some time in 1945 further efforts were abandoned. On October 26, 1955, when the lease had less than three months to run (although a one-year license to graze the premises had been entered into for 1956) a contract of purchase was negotiated by Gourley in the. name of W. S. Ranch Co., a corporation, at a price of $13 per acre, or a total price of $1,080,000. Thereafter, in April, 1956, title was transferred to the W. S. Ranch Co. This corporation had been incorporated in 1946 by Gourley, and another corporation owned by him was the owner of all its stock. No issue is made of the fact that title was taken in the name of the corporation instead of in the name of Gourley.

Plaintiff had continued to work for defendant Gourley for approximately 18 months after the lease was negotiated, then moved to Colorado for about two years and then returned to New Mexico. However, he had nothing further to do with the negotiations after August, 1945, to and including the purchase in October, 1955. Upon learning of the purchase of the ranch, plaintiff made demand for payment of a commission, and upon the same being refused instituted this suit seeking 5% commission on the purchase price from Gourley, W. S. Ranch Company and Maxwell Land Grant Co. This latter defendant was dismissed out by the court and no appeal from this action was taken. The case proceeded against the other two defendants. They answered setting up five defenses, i. e., (1) failure to state a cause of action; (2) bar of the statute of limitations; (3) plaintiff was not a licensed broker; (4) agreement was not in writing, and (5) denying certain material allegations of the complaint. A motion to strike defenses (1) to (4) was sustained, whereupon both plaintiff and defendants filed motion for summary judgment. The motion of defendants was sustained and judgment in their favor entered. From this action by the court this appeal is prosecuted, and the defendants in turn have perfected and prosecute a cross-appeal because of the court's action in striking the four affirmative defenses as set forth above.

Plaintiff argues (1) that the pleadings, exhibits and depositions establish as a matter of law that defendants were liable to pay a commission, and (2) that the granting of summary judgment in favor of defendants was error because of the presence of disputed issues of fact. Since Gourley and W. S. Ranch Company are identical

for all practical purposes, we will discuss the situation as if Gourley were the only defendant.

■■ It is plaintiff's position under his first point that he was entitled to a commission with the question of the amount about which admittedly there is a difference between the parties to be determined subsequently. Stated differently, it is plaintiff's position that the first letter quoted above established a contract between the parties entitling plaintiff to his commission upon condition the defendant got title to the property, and this condition having come to pass the commission was earned. This position arises out of Gourley's statement in his letter that " * * * I am to take care of the commission, as, if, and when we are able to get title on this acreage." As a part of the argument plaintiff asserts that there is no room for any parol evidence which would have the effect of altering the agreement as expressed.

Plaintiff, in support of his position that there was a binding contract between the parties, argues that there was a good and sufficient consideration to establish a binding contract between the parties in the nature of a novation by virtue of plaintiff's agreement to release any claim for a commission from Maxwell Land Grant Company, in consideration of Gourley's promise to pay the same and that this is true whether plaintiff was legally entitled to a commission, or only was of the honest and reasonable belief that he was entitled to it. In this position we believe him to be correct. That plaintiff agreed to release any claim against Maxwell Land Grant Company is amply clear by the language of the letter approved by plaintiff and defendant, wherein it is stated, " * * * this will confirm my understanding with you that you are not to pay any part of the commission."

That a real question is present as to whether Maxwell Land Grant Company was legally bound to pay a commission under the facts as herein set forth should be evident. See Zapf v. Hayes, 37 N.M. 188, 20 P.2d 285. However, it would appear that plaintiff claimed that he was or would be entitled to a commission by virtue of his arrangement with them.

Williston in the revised edition of his work on Contracts, Vol. 6, § 1872, at page 5258, states the rule as follows:

" * * * it is not essential that the original obligation discharged by the subsequent novation shall have been valid in every sense of the word. * * * it is clearly possible in a novation of the debtor, for a new debtor to promise absolutely to pay money in consideration of the creditor's surrender of his old claim, whether the claim was well founded or not, so long as it was not wholly frivolous and unreasonable."

See Gonzales v. Gauna, 28 N.M. 55, 206 P. 511; Charles Ilfeld Co. v. Nickson, 45 N.M. 18, 107 P.2d 1047; Hudson v. Maryland State Housing Company, 207 Md. 320, 114 A.2d 421.

The applicable rules are as above set forth. Inasmuch as the cause must be reversed for reasons hereinafter discussed, the question of whether or not the agreement sued on was a valid novation under the law should likewise be passed upon by the trial court upon remand. If at the trial it is shown that plaintiff either had a binding contract for a commission with Maxwell Land Grant Company, or was of the honest opinion that he did, predicated upon reasonable and actual grounds, then if he accepted defendant's obligation in its place, a valid novation was effectuated.

Next we must determine if there is any issue on the question of whether the plaintiff produced a purchaser ready, willing and able to buy on the terms fixed by the owner, and if the conditions of the contract were otherwise met.

In interpreting the requirements of the contract the parties are hopelessly at odds. Plaintiff asserts the only condition unperformed when the letters quoted above were written was the receiving of title to the property by the defendant, entire reliance being placed on the language "I am to take care of the commission as, if, and when we are able to get title on this acreage" to the exclusion of everything else. At the same time the defendant calls attention to the language in the letter to The Maxwell Land Grant Company wherein it is stated that "The transaction embodied in my written lease agreement with you dated July 5, 1945 (admittedly this should have been August 2, 1945) * * * was negotiated largely by Mr. C. A. Harp. I have arranged with Mr. Harp to take care of his commission on this transaction * * *" Defendant interprets "this transaction" as referring to the lease agreement dated August 2, 1945, and asserts that since the purchase and delivery of title was not pursuant thereto the conditions of the agreement were not met and no commission earned.

In support of his position the defendant cites cases from several states to the effect that a broker is not entitled to a commission if he introduces a prospective purchaser to an owner but no deal results, and thereafter he abandons all efforts to complete the transaction, but at a later date the negotiations are reopened between the prospect and the owner and a sale made at a lower price. This court so held in Las Vegas Realty & Ins. Co. v. Sparks, 29 N.M. 77, 218 P. 345. That this is in accord with the general rule is clear from notes appearing in 43 A.L.R. 1103, 1116, and 46 A.L.R. 2d 848, 864. However, this rule has no applicability here. Although ordinarily a broker has earned his commission when he

produces a purchaser who is ready, willing and able to purchase on terms agreeable to vendor, Hatch v. Strebeck, 58 N.M. 824, 277 P.2d 317; Stewart v. Brock, 60 N.M. 216, 290 P.2d 682, he may by special agreement with his principal, contract to fix definitely or to postpone time of payment of his commission, or make the same dependent upon a stated contingency as was done here. Moore v. Mazon Estate, Inc., 24 N.M. 666, 175 P. 714; Williams v. Engler, 46 N.M. 454, 131 P.2d 267; Todiss v. Garruto, 34 N.J.Super. 333, 112 A.2d 285; George H. Beckmann, Inc. v. (Zinke's) Rainbow's End, Inc., 40 N.J.Super. 193, 122 A.2d 519.

Plaintiff is either entitled to recover by virtue of the August 2, 1945, agreement and the coming to pass of the contingency therein agreed upon, or he was not entitled to recover at all. What was the contract? Is there an ambiguity present when the two letters are read together? Can parol evidence be considered or is it necessary to consider parol evidence in attempting to arrive at the intentions of the parties?

▆ That the lease agreement with particular reference to the portions thereof hereinabove quoted, and the two letters having all been executed at the same time and as a part of the same transaction are to be read and construed together would seem to be clear. City of Clovis v. Southwestern Public Service Co., 49 N.M. 270, 161 P.2d 878, 161 A.L.R. 504; Restatement

of Contracts, § 235(c); 3 Corbin on Contracts, § 549, at page 188.

Plaintiff argues that defendant would have the court read the first letter as if it provided for payment of the commission "as, if, and when we get title to the acreage, provided that such title is acquired under the terms of the lease purchase agreement," whereas no such proviso appears in the agreement. He argues that, to the contrary, the language used in the agreement is clear and unambiguous and entitles him to a commission "whenever and however title was acquired by Gourley."

It is defendant's position that under the second letter in which the parties agreed that the defendant had "arranged with Mr. Harp to take care of his commission *on this transaction * * *"* the right to the commission and the duty to pay arose only if title passed under the provisions of Part II of the lease which never occurred and, accordingly, plaintiff never became entitled to the commission.

Our research has led us to the case of Wachs v. Wachs, 11 Cal.2d 322, 79 P.2d 1085, 1086, a case we consider most helpful in resolving the issue before us. In that case the parties in effecting a dissolution of their real estate business agreed that defendant would pay plaintiff a certain percentage "* * * out of the commissions earned from any transactions consummated on or before October 1, 1934, a sum not to exceed $2500," the sum to be payable

when any transaction leading to a commission was closed as to any person whose name appeared on a schedule attached. This schedule contained the names of many individuals with whom the firm had done business over the years, but did not list or mention the individual's principals or employers. Thereafter, when sales were made through the individuals acting on behalf of principals whose names did not appear on the list a dispute arose as to the meaning of the contract and intention of the parties. The question developed on the trial when the trial court refused to permit the introduction of evidence as to the names of principals for whom the persons named on the schedule were acting and overruled an offer of proof concerning the same. In reversing, the Supreme Court of California had the following to say:

"* * * It is conceded that the question involved is whether the language 'When any transaction leading to a commission is closed as to any person on said Schedule 10', as used in said contract, is clear and explicit or whether said language involves such an uncertainty as to permit the introduction of parol evidence in aid of the interpretation thereof. It is further conceded that 'the question whether an uncertainty or ambiguity exists is one of law, and the lower court's finding on this issue is not binding on appeal'. (Brant v. Calif. Dairies, Inc., 4 Cal.2d 128, 133, 48 P.2d 13.) We are of the opinion that owing to the various senses in which the word 'transaction' may be used, such an uncertainty existed in the language employed in the contract here as to permit the introduction of the parol evidence offered.

"The word 'transaction' may imply something more than sale, lease or contract as used in the contract before us. It has been stated that said word embraces within its meaning 'the doing or performing of any business' (2 Bouv.Law Dict., Rawle's Third Revision, p. 3307); 'negotiation' (United States v. Pan-American Petroleum Co., 9 Cir., 55 F.2d 753); 'negotiations affecting property rights, contracts, agreements, and the negotiations resulting in contracts and agreements and in the transfer of titles'. (Tanner v. State, 161 Ga. 193, 130 S.E. 64.) Other definitions may be found in the authorities of which we need cite but a few. (Stephens v. Short, 41 Wyo. 324, 285 P. 797; Bright v. Virginia, etc., Co., 9 Cir., 270 F. 410; Southeastern Life Ins. Co. v. Palmer, 120 S.C. 490, 113 S.E. 310; Wilson v. Wilson, 83 Neb. 562, 120 N.W. 147.) Perhaps the word 'transaction' is such a word as was in the mind of Mr. Justice Holmes when he said, 'A word is not a crystal, transparent and unchanged, it is the skin of a living thought and

may vary greatly in color and content according to the circumstances and the time in which it is used.' (Towne v. Eisner, 245 U.S. 418, 425, 38 S.Ct. 158, 62 L.Ed. 372, L.R.A.1918D, 254.)

"What then is the meaning, or the 'color and content', of the word 'transaction' as used in the contract before us? * * * It is one of those contracts where the words 'consistently admit of two interpretations, according to the subject matter in contemplation of the parties' and in which 'parol evidence might be admitted to show the circumstances under which the contract was made and the subject matter to which the parties referred'. Jenny Lind Co. v. Bower & Co., 11 Cal. 194, 198; see, also, McNeny v. Touchstone, 7 Cal.2d 429, 60 P.2d 986; Civ.Code, sec. 1647; Code Civ.Proc., sec. 1860. The trial court should therefore have permitted appellant to plead and prove the surrounding circumstances, not for the purpose of varying the terms of the written instrument, but for the purpose of aiding the court in interpreting the contract of the parties as embodied in the written instrument."

■ We are impressed that we have a comparable situation. In what sense was the reference to "this transaction" used in the letter? Was it intended in any way to qualify the absolute promise to pay "as, if, and when" title was acquired? The depositions introduced in the case demonstrate that different meanings were attached thereto by the parties. To permit parol evidence to explain ambiguities such as are present here in no way violates the parol evidence rule. Schwentker v. Hubbs, 21 N.M. 188, 153 P. 68; Hill v. Hart, 23 N.M. 226, 167 P. 710. Testimony was admissible to explain the ambiguity here present which being true means that an issue of material fact not determinable on motion for summary judgment was present. In holding otherwise and granting summary judgment the trial court fell into error. § 21–1–1(56) (c), N.M.S.A.1953; McLain v. Haley, 53 N.M. 327, 207 P.2d 1013; Michelson v. House, 54 N.M. 197, 218 P.2d 861.

■ In this connection, note should be taken of the fact that both parties had moved for summary judgment alleging the absence of a material fact issue. Nevertheless it was the duty of the trial court to independently determine whether or not a genuine issue of fact was actually present. See cases cited in note in 36 A.L.R.2d 881.

■ As mentioned at the outset of this opinion, the defendants have perfected a cross-appeal based upon the trial court's action in striking four affirmative defenses. From what has been said above, it is clear that a cause of action was stated in the

complaint and the first defense was properly stricken.

■ The second affirmative defense was to the effect that the cause of action having occurred in 1945, the six-year statute of limitations applicable to written instruments (§ 23–1–3, N.M.S.A.1953) barred the action. Although the contract was entered into in 1945, and all that was required by way of performance from the plaintiff had then been accomplished, the parties are in agreement that the commission, if any, would not become due until the condition contained in the contract of the parties came to pass, i. e., the obtaining of title to the acreage by defendant. This did not occur until 1955 or 1956. The limitations statute (§ 23–1–3) contains a proviso reading:

"Provided, however, That (should) [if] the payee of any bond, promissory note, bill of exchange or other contract in writing or upon any judgment of any court not of record, has heretofore or shall hereafter enter into any contract or agreement in writing to defer the payment thereof, or contract or agree not to assert any claim against the payor or against the assets of the payor until the happening of some contingency, the time during the period from the execution of such contract or agreement and the happening of such contingency shall not be included in computing the six-year period of limitation above provided."

As was stated in Schoonover v. Caudill, 65 N.M. 335, 337 P.2d 402, where most of the New Mexico cases involving this section of the statute of limitations are reviewed, it is clear from the quoted language that in computing the limitation period, the time elapsing between the making of the contract and the happening of the condition when performance became due should not be counted. Accordingly, it is clear that the statute had not run and the action was not barred. The court did not err in striking the defense.

■ The next two defenses raise the issue of the necessity that the plaintiff be licensed as a broker—admittedly he wasn't—and that the agreement between the parties be in writing.

§ 67–24–15, N.M.S.A.1953, prohibiting suit for collection of a commission except by persons licensed as brokers or salesmen "at the time the alleged cause of action arose" was enacted in 1951, long after plaintiff's employment and long after his services had been performed. Licensing of brokers was not required under our law in 1945.

Likewise, the restrictions of § 67–24–15 apply only to real estate brokers and salesmen "required to be licensed under the provisions of this act," and by § 67–24–1 this is limited to persons so acting "on and

after the effective date of the (this) Act * * *" Thus it is clear that the actions for collection of commissions which may not be maintained in our courts, are actions by persons required to be licensed, and these are only those acting as brokers or salesmen after the effective date of the act in 1951.

■ Defendant's fourth affirmative defense is to the effect that after July 1, 1949, any agreement entered into which has for its purpose the "authorizing or employing an agent or broker to purchase or sell lands, tenements, or hereditaments or any interest in or concerning them for a commission or other compensation" was declared to be void unless in writing and properly signed. This statute was passed in 1949, Laws 1949, c. 19, and the answer to defendant would be the same on this defense as on the one requiring brokers to be licensed except that as Section 2 the statute contained another provision reading, as follows:

"Suits or actions founded upon any such agreement, not in writing, entered into on or prior to the first day of July, 1949, may be brought within ninety days after the accrual of the cause of action upon such agreement, or within ninety days of the effective date of this Act, whichever is later, and not afterwards * * *"

It seems clear to us that the agreement sued on herein is not one which had for its purpose the "authorizing or employing an agent or broker to purchase or sell lands, tenements or hereditaments or any interest in or concerning them, for a commission or other compensation." As we have already noted the agreement alleged is one by the defendant Gourley to pay a commission already earned or honestly claimed to have been earned by plaintiff from the landowner because of services rendered in putting defendant in line to lease and possibly purchase the land in question—the right to collect to be postponed until title was transferred. The agreement is not one covered by or required to conform to the statute, and accordingly the limitation provision quoted above did not apply.

From the foregoing it is clear that the various points argued on the cross-appeal are without merit, and the trial court did not err in striking the four separate defenses.

For the reasons stated in our discussion of the appeal by plaintiff the cause must be reversed and remanded with instructions to reinstate the case on the docket and to proceed in a manner not inconsistent herewith.

It is so ordered.

COMPTON, C. J., and CARMODY and CHAVEZ, JJ., concur.

NOBLE, J., not participating.