160 P.2d 951

## PUGH v. DOLLAHAN.

No. 4889.

Supreme Court of New Mexico.
July 20, 1945.

E. E. Young, of Roswell, for appellant.

G. T. Watts and O. O. Askren, both of Roswell, for appellee.

BICKLEY, Justice.

Plaintiff, a licensed real estate broker, sued defendant for a commission alleged to have been earned.

The contract of employment was in the form of a listing with the plaintiff, signed by the defendant. This instrument contained the following, among other terms:

"Listing to sell this ranch, including 5 percent commission if sold.

"Price $6500. * * *

"Amount of Down Payment $ All cash."

There is no contention by plaintiff that he accomplished the specific result set forth in the foregoing memorandum. But the plaintiff contended below that after the written contract of employment above mentioned was entered into, the terms and conditions of the contract were modified or changed.

The trial court agreed with plaintiff that such modification could be made and sup-ported by parole evidence alone, which decision is reflected in the court's finding of fact Nos. 3 and 4 as follows:

"3. On December 12, 1943, the plaintiff procured one Ira Hendrix, as a buyer for said farm; that Ira Hendrix was willing to pay $6500.00 for said place, but at that time was only able to pay $3,000.00 in cash and wanted terms on the remainder; that the plaintiff told said Dollahan that he had Hendrix as a buyer but that he could only pay $3,000.00 cash and that he wanted terms on the balance, whereupon Dollahan, the defendant, stated that such arrangement would be satisfactory and that he would accept $3,000.00 in cash and give terms on the remainder, but there was nothing stated by either party as to the terms on such deferred payments, and defendant advised the plaintiff to send said buyer to him and they would make the deal.

"4. That when the buyer appeared the defendant had changed his, mind and demanded all cash for said property."

From this and other findings of fact the court concluded as a matter of law that the plaintiff was entitled to judgment against the defendant. Judgment followed and defendant appeals.

Since there is no conflict in the evidence offered by plaintiff, and the plaintiff appellee has filed no brief and hence there is no challenge of the sufficiency or correctness of the defendant-appellant's statement of the facts, we draw upon appellant's brief for the facts and his theory of the case.

The appellant briefly summarizes the facts as follows: "The defendant listed the farm in question with the plaintiff to be sold for cash and agreed to pay 5% commission; on the 12th day of December, 1943 the plaintiff procured Ira Hendrix as buyer who was willing to pay $6,500.00 for the farm but was only able to pay $3,000.00 in cash and wanted terms on the balance. The plaintiff told the defendant that Ira Hendrix was a buyer but only had $3,000.00 and wanted terms on the balance and that the defendant stated that such arrangements would be satisfactory, that he would accept $3,000.00 in cash and give terms on the remainder but nothing was stated by either party as to the terms on the deferred payments and defendant advised the plaintiff to send the buyer to him and they would make the deal and that when the buyer appeared the defendant had changed his mind and demanded all cash for the property; and that thereafter the defendant sold the farm to one W. O. Montgomery, but the plaintiff had nothing to do with the sale."

The witness Hendricks, the prospective customer produced by the plaintiff, testified as follows:

"Q. Were you ready, willing and able to pay sixty-five hundred dollars cash to Mr. Dollahan? A. Not at that time.

"Q. When did the terms change? A. I talked to Mr. Dollahan and we could not agree on terms, and he wanted cash, so I rustled the money and got it.

"Q. And you got the farm about three weeks later? A. Something like that, three or four weeks later.

"The Court: Did you buy it from Mr. Dollahan?

"The Witness: No, sir.

"The Court: How was that deal handled?

"The Witness: I could not say; I do not know anything about the deal any more than during the time I was getting the cash he had traded off or sold it to Mr. Montgomery; I do not know anything about that deal but I bought it from Mr. Montgomery and he deeded it to me."

Appellant quotes the foregoing and much more of the testimony of Hendricks and of the plaintiff and argues that the conclusion of the district court is wrong, first because while the written contract of employment may be modified, "a written contract employing a broker cannot, however, in an action between the parties, be varied by parole evidence," quoting 8 Am.Jur., Contracts, § 19.

Appellant's brief continues:

"The evidence above quoted clearly shows that there was but one meeting between Hendrix and the defendant, and Hendrix as a witness testified that when he went to see Mr. Dollahan they could not agree on terms; that he did not have the cash; and that by the time he got the cash and saw the defendant again the farm had been sold to another party and the plaintiff,

Pugh, had nothing whatever to do with that sale. The witness, Pugh, testified that when he asked Dollahan if he would accept the cash and the rest on terms Dollahan stated that he would do so but he would first have to see and talk with the buyer, Hendrix. Thus it is readily apparent that no terms were ever agreed upon by and between Pugh and Dollahan, and Pugh was never authorized to sell the farm on any other terms except cash consideration. Defendant concedes that had he authorized Pugh to sell the farm for $3,000.00 in cash and the balance on terms and had agreed with Pugh that the balance on terms should be paid in a certain length of time or times and with a certain percentage of interest, and if the plaintiff Pugh had procured a buyer ready, able and willing to buy the farm on such terms, that the defendant, would have been obligated to pay the commission; but this certainly does not appear from the record and no contract exists between the plaintiff and defendant that can be enforced other than a cash deal as it was the only authority with which the plaintiff was clothed by his contract of employment. It is the universally accepted rule of law that a broker is not entitled to his commission on a sale unless and until he produces a buyer ready, able and willing to buy the property on the terms fixed by the principal. This rule has been adhered to by this Court in every instance in which the question has been passed upon. Moore v. Mazon Estate, 24 N.M. 666, 175 P. 714; Williams v. Engler, 46 N.M. 454, 131 P.2d 267. In the latter case the court held:

" 'Generally, a broker has earned his commission when he has produced a purchaser ready, able, and willing to purchase upon terms *given to broker by owner.'* " (Emphasis supplied.)

Assuming, but not deciding, that the contract of employment of the broker by the owner was modified as contended below by the appellee, such modification is too vague and uncertain to be enforced under the circumstances of this case.

We find in the Restatement of the Law of Agency, § 445, the following: "When the principal has furnished the broker with only part of the terms, with the understanding that further details are subject to negotiation between the principal and the customer when found, the principal is free to terminate such negotiations without liability to the broker. The principal's promise to pay the broker a commission does not become binding unless the principal and the customer reach a present definitive oral or written agreement. The broker has not earned his commission, even though the principal and the customer have drafted a memorandum of their proposed agreement, if they did not intend such proposed agreement to be presently binding upon them and hence reserved signature of the memorandum for a later occasion; at this point if either the principal or customer withholds such final consent, no commission is due."

In the case at bar the details of the "terms" were never "given to the broker by the owner", and hence it cannot be success-

fully contended that the broker produced a buyer ready, able and willing to buy on the terms fixed by the principal.

There is nothing in the record to show that the owner promised to hold the matter open for a definite time, or at all, for the customer, Hendricks, to see if he could get the cash.

It must be remembered that this is an action on contract for a commission.

Whether plaintiff has a cause of action for breach of contract, based upon bad faith, prevention by the owner of arrival at an agreement on the "terms" or otherwise is not within the issues in this case and we express no opinion as to such speculation.

All we hold is that the plaintiff did not make out his case and that the court erred in overruling defendant's motion for judgment in his favor. Had the property been sold to the customer produced by the broker, this might have cured the indefiniteness of the "terms" mentioned, but such is not the case.

The judgment must be reversed and the cause remanded, and It is so ordered.

MABRY, C. J., and SADLER, BRICE, and LUJAN, JJ., concur.