DELAWARE APARTMENTS, INC., a corporation of the State of Delaware, Appellant Defendant Below, v. JOHN J. MONAGHAN Co., a corporation of the State of Delaware, Respondent Plaintiff Below.

(*October* 18, 1949.)

HARRINGTON, Chancellor, RICHARDS, C. J. TERRY, PEARSON and LAYTON, J. J., sitting.

*Philip Cohen* for Defendant Below Appellant.

*W. T. Knowles* for Plaintiff Below Appellee.

Supreme Court, No. 4, May Session, 1948.

80

LAYTON, Judge, delivering the opinion of the Court.

█ The law governing the right of real estate brokers to recover commissions for the sale of property is correctly stated by Gross, The Law of Real Estate Brokers, in part II, "Commissions and Their Recovery," Chap. III, Sec. 131 et seq.: "The broker must produce a purchaser ready, willing and able to purchase on the principal's terms."

"In Section 132, the author further speaks as follows:

"Whatever may be the terms and conditions upon which the broker's right to compensation depends, they must be performed as a condition precedent to a right of action for a commission. Where the terms of the sale are all given to the broker in advance, he must produce a purchaser ready, willing and able to purchase on those terms, and the owner may refuse any proposed purchaser who is not willing to purchase on all of those terms.

\*　\*　\*　\*　\*　\*

"If no terms are laid down before hand by the principal, the broker takes the hazard. In such case the broker cannot recover commissions unless he produces a purchaser ready, willing and able to purchase on the terms, whatever they may be, then stated by the owner."

See also *Pugh v. Dollahan,* 49 *N.M.* 213, 160 *P.2d* 951; *Bracher v. Olcott,* 130 *Misc.* 859, 224 *N.Y.S.* 715; *Thompson & Co. v. Madison Square Garden Corp.,* 225 *App. Div.* 521, 233 *N.Y.S.* 608; *Maier v. Romano,* 102 *Conn.* 556, 129 *A.* 274.

█ Defendant contends first that one of the essential terms of the transaction (that is, the closing or settlement date) had not been decided upon at the time the contract of sale was executed by the purchasers and he was within his rights in refusing to accept the contract. But the trial Judge found from the facts, and there is evidence to support the finding, that Rosin was au-

thorized to insert the date of October 1, 1946, for the date of settlement. This contention is untenable.

■ Next, it is asserted that Rosin had no authority to include the furniture in the apartment house as part of the transaction. Again, the trial Court found to the contrary and there is evidence to support his conclusion in that respect. This contention is dismissed.

Defendant also strongly relies upon the defense that Johnston was justified in refusing to accept the contract because Rosin, completely without authority, inserted a provision for a down payment, or deposit, in the sum of only $1,000. But we are unable to find authority to the effect that, in the absence of an agreement, an advance deposit of cash and the amount thereof, constitute essential terms of a real estate transaction.

■ Here, admittedly, there was no discussion between the parties as to a down payment or the amount thereof. The form of contract presented by Rosin contains a provision for a deposit in an amount which seems to us surprisingly low in view of the size of the transaction and the lengthy period stipulated for settlement. However, we think the findings indicate that the trial Judge determined that the amount of the deposit was not deemed an essential term either by the plaintiff or the Defendant. There was ample evidence to support this view.*

■ Likewise, it appears that the trial Court determined that the provision for an undertaking binding each party in the penal sum of $1,000 was not an essential term. In view of the fourth conclusion of law, which is not assigned as error, it may not now be argued that the undertaking would substantially limit the remedies of defendant in case of default by the purchasers. This contention may be dismissed without further consideration.

---

\* The trial Judge apparently believed Rosin's testimony that Johnston refused to sign the contract of sale because he had secured another purchaser at a higher figure.

■ Johnston insists that the trial Court erred in finding that the Seidels were ready, able and willing buyers. As we understand the law, unless the contract of sale calls for immediate cash payment, a ready, able and willing purchaser need not have in hand at the signing of the agreement of sale the full amount of cash representing the purchase price. It is sufficient that he have assets from which the purchase price may be realized by the time of settlement. See discussion in 12 *C. J. S., Brokers*, § 85 (*b*), *p.* 192 and cases cited.

■ The trial Court's finding that the purchasers were ready, willing and able buyers is not precluded by Seidel's testimony that he would not have gone through with the deal unless he sold (rather than mortgaged) some of his real property assets in order to raise the purchase price. In the light of other testimony and the evidence of financial ability to respond to a monetary judgment or decree, we refuse to disturb the finding in this respect.

■ Johnston has also raised the defense that Rosin failed to disclose to him the fact that unless the purchasers sold their Drug store property to provide the cash needed to purchase the apartments they would not go through with the contract of sale for the apartments. In other words, it is charged that Rosin breached his fiduciary relationship with his principal in failing to disclose not only that he was also representing the Seidels in attempting to dispose of some of their properties to raise the cash necessary to buy the apartments, but also in the fact that he knew they would have defaulted had their properties failed of sale. But appellant fails to give weight to the finding of fact by the trial Judge that the Seidels were ready, willing and able purchasers which obviously precludes the defense.

Finally, it is suggested that Johnston had a right to refuse the contract because it contained the following provision: "This contract is made subject to the approval of the owner." From this

language it is urged that Johnston was free to withdraw the agent's authority at any time before a sale was consummated or refuse to sign any agreement of sale tendered him.

An examination of the form of contract presented discloses that this provision has an altogether different meaning. The contract purports to be between the plaintiff as agent and the Seidels as purchasers, with a form of approval to be signed by the defendant as owner. The clause, "subject to the approval", is manifestly to make clear to the contract purchasers that execution of the agreement by them and by the agent did not effect a binding contract of sale until approval of the owner had been obtained. The clause has nothing to do with the owner's liability to the agent for commissions. Whether or not the owner approved, it became liable to the agent, if the latter produced a purchaser ready, willing and able to purchase on all essential terms in accordance with the owner's authorization to the agent.

We think that the lower Court's findings are supported by adequate evidence and that they should not be disturbed.