UNITED STATES of America,
Appellant,

v.

The GOLDFIELD CORPORATION as successor to American Chrome Company, Appellee.

No. 9143.

United States Court of Appeals
Tenth Circuit.

Nov. 2, 1967.

Robert V. Zener, Atty., Dept. of Justice (Barefoot Sanders, Asst. Atty. Gen., Lawrence M. Henry, U. S. Atty., Alan S. Rosenthal and Jack H. Weiner, Attys., Dept. of Justice, Washington, D. C., with him on brief), for appellant.

Robert H. Harry, Denver, Colo. (L. Richard Freese, Jr., Denver, Colo., with him on brief), for appellee.

Before MURRAH, Chief Judge, WILBUR K. MILLER,* Senior Circuit Judge, and HICKEY, Circuit Judge.

HICKEY, Circuit Judge.

The United States, appellant, brought this action against appellee Goldfield, as successor to American Chrome, a subsidiary, for an accounting and restitution of allegedly exorbitant and unconscionable profits realized under a contract to procure chromium for stockpiling.

A team representing the government negotiated the contract with the officers of American Chrome. It is alleged that during the course of negotiations American Chrome induced a material conflict of interest on the part of Lukens, a government negotiator and fiscal advisor to the team, and as a result the contract was drawn to the disadvantage of the government. No violation of a statute is claimed to have been committed.

Following the judgment by the court for Goldfield, the United States initiated this appeal. We affirm.

A letter contract was the result of the negotiations in January, February and March of 1952. In October, 1953, a formal contract was executed and made retroactive to, and supplanted the letter contract. The evidence relates to that period of time which was prior to the letter contract and is unrelated to the formal contract.

Both the letter contract and the formal contract provided for redetermination of the contract price only after the first and second production years instead of after each year of the eight-year term. Under the provision for the redetermination of the contract price after each year covered by the provision, the unit price would be adjusted to fairly reflect costs. It is the government's contention that this clause resulted in exorbitant and unconscionable profits because the company's costs went down in the later years of the contract but the unit price remained the same and the percentage of profit increased.

The negotiations began on January 8, 1952, and as early as January 21, 1952, the two-year limitation on the price redetermination provision appeared as a prospective term of the contract. The first draft of the contract, which was presented to the company negotiators on February 8, 1952, contained the two-year limitation on redetermination of price. The questioned provision was retained in subsequent drafts and was included in the letter contract which was executed by the United States on April 11, 1952.

The District Court found that sometime subsequent to February 11, 1952, the company expressed an interest in employing Lukens as comptroller. At various times between February 27 and March 15, 1952, Lukens conferred with company officials concerning the offer of employment. Company officials entertained the Lukens family at a luncheon on March 15, 1952, to explain the living conditions at Nye, Montana, where the mine was located, to Mrs. Lukens.

It would appear Lukens accepted American Chrome's offer of employment before the letter contract was signed by the government on April 11, 1952. Lukens received an increased salary from the corporation and also some incentive stock in the corporation.

American Chrome signed the letter contract on April 21, 1952, and notified the government at that time of its employment of Lukens as comptroller. Thereafter, Lukens had no connection with the preparation or negotiation of the contract.

After Lukens' resignation, the Division of Compliance for the General Services Administration conducted an investigation of all persons connected with the negotiation of the contract on behalf of the government. The report of the investigators concluded: "This investigation does not indicate any irregu-

---

* Of the United States Court of Appeals for the District of Columbia sitting by designation.

larity, favoritism, or undue influence on the part of Lukens in favor of the American Chrome Company." Within a year after completion of the entire transaction a Senate Committee investigated the stockpile program and referred the American Chrome contract to the Justice Department.

The pre-trial order stated the issue as seeking recovery of excessive and unconscionable profits caused by the conduct of the appellee in influencing the government agent to retain the two-year limitation on price redetermination.

The trial court found, on conflicting testimony, that the profits were not excessive nor unconscionable and, therefore, the government failed to meet its burden of proof. The trial court also specifically found that the government had failed to show "the officials of the company induced and promoted an improper relationship with Lukens."

■ Because the trial court's decision was based on documentary evidence rather than live testimony, the government argues that this court cannot apply the "clearly erroneous" standard of Rule 52(a), Fed.R.Civ.P. This court has specifically held that notwithstanding the fact the trial court did not have an opportunity to judge the credibility of the witnesses, the court's findings are not to be set aside unless clearly erroneous. Epperson v. Connecticut Fire Insurance Co., 314 F.2d 486, 491 (10th Cir. 1963).

Even though the statement of the issue in the pre-trial order and the theory of the government in the trial was whether a conflict of interest on the part of Lukens actually resulted in the contract being drawn to the disadvantage of the government, the government here contends it was only necessary to show that Lukens had accepted employment with American Chrome after the negotiations had begun; thereafter, public policy gives rise to a presumption the conduct of appellee was tainted and harm to the government resulted.

■ The basis of an action for restitution is that "[a] person is not permitted to profit by his own wrong at the expense of another." Restatement of the Law, Restitution § 3 (1937). "A third person who has colluded with a fiduciary in committing a breach of duty, and who obtained a benefit therefrom is under a duty of restitution to the beneficiary." Id. § 138.

The government contends the benefit received by American Chrome was the excessive and unconscionable profit. It is argued the government should recover an amount equal to the court's determination of tainted profits.

United States v. Mississippi Valley Generating Co., 364 U.S. 520, 81 S.Ct. 294, 5 L.Ed.2d 268 (1961), known as the Dixon-Yates case, is relied upon as establishing a public policy which, under the facts of this case, gives rise to a presumption that Lukens' dealings constituted a conflict of interest and resulted in excessive and unconscionable profits.

■ In Dixon-Yates the Supreme Court examined 18 U.S.C. § 434 to establish the standards of public policy applicable to the facts of that case. Because the facts of the case at bar are not similar to Dixon-Yates, we examined 18 U.S.C. § 201 and view it as a statement of the public policy in cases where a government employee, upon a promise of benefit to himself, is induced to violate his duty to his government for the benefit of a third party. Thus, the United States has the burden to prove American Chrome's purpose in employing Lukens at a better salary was to reward him for including and maintaining the two-year limitation on price redetermination in the contract. United States v. Irwin, 354 F.2d 192 (2nd Cir. 1965).

■■ It is contended this burden is satisfied by a presumption arising out of the public policy declared; however, the presumption must rest upon some fact from which it can be deduced. The pre-trial order indicated the fact from which the presumption could be deduced was excessive and unconscionable profits. Since the contract has been fully performed, the court has the benefit of the

accomplished facts which are before it to decide whether the profits were in fact excessive and unconscionable. It follows that because the trial court has determined the profits were not excessive and unconscionable, and because such finding is not clearly erroneous, the basic fact necessary to give rise to the presumption does not exist.

The trial court tried the case on this theory and found against the government, saying: "The plaintiff [appellant] has failed to show by clear and convincing evidence that the officials of the company, or, more importantly, that the activities of these individuals were directed toward or were the cause of, the provisions of the contract limiting the redetermination of the price to the first two years of production."

The whole record indicates the findings are not clearly erroneous, nor has a mistake been made in the applicable law.

Affirmed.