**ENERDYNE CORPORATION,**
Plaintiff-Appellant,

v.

**WM. LYON DEVELOPMENT CO., INC.,**
Defendant-Appellee, and Panorama
Company, Inc., Intervenor-Appellant.

Nos. 73–1345, 73–1346.

United States Court of Appeals,
Tenth Circuit.

Argued and Submitted Oct. 17, 1973.

Decided Dec. 28, 1973.

Thomas McKenna, Albuquerque, N. M.
(John P. Dwyer, Albuquerque, N. M., on
the brief), for plaintiff-appellant.

Peter G. Prina, Albuquerque, N. M. (Bruce D. Hall, Albuquerque, N. M., on the brief), for defendant-appellee.

Vance Mauney, Albuquerque, N. M. (Graham E. Evans, Albuquerque, N. M., on the brief), for intervenor-appellant.

Before HILL, McWILLIAMS and BARRETT, Circuit Judges.

BARRETT, Circuit Judge.

Enerdyne Corporation (Enerdyne) brought this suit against William Lyon Development Company (Lyon) for damages, alleging wrongful termination and breach of a written contract to purchase land. The trial court granted Lyon's Motion to Dismiss. The Court also dismissed Panorama Company's (Panorama) intervenor action for a brokerage commission. The Court held that a firm commitment from the FHA guaranteeing an insurable mortgage in the amount of $2,561,000 by Enerdyne was a condition precedent to a valid and binding contract and that Enerdyne failed to perform the condition precedent.

In January, 1971, Enerdyne filed an Application-Project Mortgage Insurance with the FHA requesting a feasibility letter for Dorado Village Apartments, Albuquerque, New Mexico. The feasibility letter was issued on May 13, 1971 to Enerdyne. It stated that the insurable mortgage would not exceed $2,561,000.

A Purchase Agreement between Enerdyne, Seller, and Lyon, Buyer, was executed on June 15, 1971. It contained the following as a condition precedent to closing:

> Seller shall have obtained from the Department of Housing and Urban Development, and/or the Federal Housing Administration a commitment guaranteeing an insurable mortgage in the amount of Two Million Five Hundred Sixty-One Thousand and No/100 Dollars ($2,561,000.00) for Dorado Village Apartments, Project Number 116–35031–PM Section 221(d)(4) said commitment to be transferred to Buyer.

Thus Lyon was not obligated to pay Enerdyne the purchase-money consideration until the firm commitment had been obtained.

Lyon was to obtain bids from contractors and determine construction costs on the Dorado Village Apartments. Lyon brought personnel to Albuquerque and opened an office. It asked Enerdyne for several delays in filing the application for conditional commitment, each of which Enerdyne agreed to. Building costs in the Albuquerque area rose substantially between June and November of 1971. The bids Lyon obtained far exceeded the costs allowed in the feasibility letter. Lyon's and Enerdyne's representatives met in October of 1971 in attempts to solve the high cost problem. However, no solution was reached.

On November 2, 1971 Lyon wrote Enerdyne advising that it was terminating all negotiations between them. Enerdyne had not furnished the firm commitment, the condition precedent to closing the Purchase Agreement.

Enerdyne contends that: (1) Lyon was not justified in terminating the contract; (2) there is evidence of bad faith; and (3) the District Court erred in granting Lyon's Motion to Dismiss and further that the Court should have granted it a new trial.

Enerdyne alleges that Lyon was responsible for its failure to secure the firm commitment in that it could not obtain the firm commitment until Lyon had fulfilled its tasks. Enerdyne argues that Lyon took over the tasks of obtaining bids, cost estimates, and the preparation of applications to be submitted to the FHA for the firm commitment, and that Enerdyne could not obtain the firm commitment until Lyon had acted to completion. The delays requested by Lyon and granted by Enerdyne for changes in the specifications caused a time lapse during which the cost of building construction materials rose dramatically. Enerdyne contends that Lyon's performance was, accordingly, a condition precedent to its perform-

ance and that Lyon's delays placed Enerdyne in a position where it could not perform.

The trial court's findings cannot be set aside unless they are clearly erroneous. Sta-Rite Industries, Inc. v. Johnson, 453 F.2d 1192 (10th Cir. 1971), cert. denied, 406 U.S. 958, 92 S.Ct. 2062, 32 L.Ed.2d 344 (1972); Dailey v. City of Lawton, Oklahoma, 425 F.2d 1037 (10th Cir. 1970); United States v. Goldfield Corporation, 384 F.2d 669 (10th Cir. 1967).

■ We uphold the Court's finding that Enerdyne's failure to furnish the FHA firm commitment in accordance with the contract was no fault of Lyon and that Lyon did not assume Enerdyne's duty to obtain the commitment. Enerdyne could not obtain the firm commitment because the costs of the project rose in excess of the amount estimated for the project in the feasibility letter by the time Lyon terminated the agreement.

■ A contracting party may repudiate his performance if a condition precedent to that performance cannot be satisfied. 3A Corbin, Contracts § 762 (1960). On the date that Lyon terminated the agreement Enerdyne could not have obtained a firm FHA commitment in accordance with the feasibility letter. The risk of a rise in construction costs belonged to Enerdyne.

■ Enerdyne contends that there is substantial evidence of bad faith because there was testimony that Lyon was looking for loopholes in order to terminate the agreement. The credibility of one of Lyon's witnesses was in question. He testified that Lyon's profits were off and it would lose profits if the contract was carried out. His credibility was a function of the trial court to evaluate. Ruth v. Utah Construction & Mining Co., 344 F.2d 952 (10th Cir. 1965). The court did not err in finding that "at all times material herein, Buyer dealt with the Seller in good faith."

Enerdyne asserts that the Court erred in granting Lyon's Motion to Dismiss and in refusing to grant a new trial. These contentions have been answered; we hold that they have no merit.

The intervenor, Panorama, alleges that it earned a brokerage commission when it brought Enerdyne and Lyon together.

Christopher Kelly, a real estate broker, is president of Panorama. Lyon engaged Panorama, as a broker, to find single family lots and multi-family lots where townhouses and apartments could be built. Subsequently, Kelly met Hanosh, president of Enerdyne. Hanosh had just received the feasibility letter earlier referred to from the FHA relating to an apartment development and was seeking out a buyer. Following initial negotiations between Kelly and Hanosh, Kelly brought representatives of Enerdyne and Lyon together for final discussions regarding a purchase agreement. Enerdyne was made an offer by Lyon which it accepted. Kelly, for Panorama, was then instructed by Lyon to prepare the Purchase Agreement. The contract, as drawn by Kelly and later redrafted by Lyon, contained this identical clause:

5. *Commission.* SELLERS agree to pay Christopher T. Kelly, d/b/a Panorama Company, Inc., a commission in the amount of six percent (6%) of the *sale price* of the land under this contract, plus four percent (4%) tax on the amount of the commission. (Emphasis ours).

■ The trial court held that Panorama (the broker) was a party to the Real Estate Purchase Agreement and was to be paid a commission only if the sale was completed and closed. We agree.

■ The general rule is that a broker has earned, and is entitled to his commission, when he has procured a purchaser who either consummates the purchase, or who is ready, able and willing to do so upon the terms given to the agent by the owner. Williams v. Engler, 46 N.M. 454, 131 P.2d 267 (1942). See also 12 Am.Jur.2d Brokers § 182

(1964); Harp v. Gourley, 68 N.M. 162, 359 P.2d 942 (1961); Sanders v. Freeland, 64 N.M. 149, 325 P.2d 923 (1958); Stewart v. Brock, 60 N.M. 216, 290 P.2d 682 (1955). Panorama contends that the general rule applies here.

The facts in this case indicate that Panorama's commission was contingent upon the completion of the contract, although the contract is silent on the question. It states only that the commission is to come from the "sale price of the land." Kelly, Panorama's broker, prepared the original sales contract; he met with Lyon's representatives, Hanosh, president of Enerdyne, and the architect between the dates the contract was executed and the date it was terminated. Kelly knew that the contract was contingent upon Enerdyne obtaining a firm FHA commitment letter and he was further aware of the rising costs of the project. He was asked to make suggestions to cut costs.

Hanosh testified that he told Kelly that he would pay him 6% on $130,680 at the time of closing and 6% on the balance of $300,000 as the $100,000 purchase installments were paid by Lyon. Hanosh stated that Kelly insisted on 7% interest on the commission relating to the $300,000 to be paid in installments, and that Hanosh agreed. Hanosh's testimony is corroborated by Kelly. When Kelly was asked whether the only way he was going to get a commission was if the project was "made to go between these two parties" he replied, "Well, this is—the project is going to have to be sold, let's put it that way." Kelly further testified that he was still dealing with the parties after the contract was signed because he was working on some deals with Lyon at that time.

The record before us indicates that Kelly remained involved and was more of a party to the contract than a broker, in view of his attempts to consummate the contract in order to realize his commission. If Kelly's commission was earned when the contract was signed his duties would have ended at that time.

In addition to the general rule supportive of Panorama's claim based upon its production of a ready, willing and able purchaser at the time the contract was executed, there is authority that a broker is entitled to his commission even though the sale was not consummated where the contract entitled the broker to the commission based on the "sale price" where the amount is expressly stated. Evans v. Rublee, 108 Wash. 174, 183 P. 83 (1919). However, the facts and circumstances above related support the trial court's ruling that Panorama's commission was contingent upon a consummated sale.

We affirm.