Hillsborough
No. 82-363

RAYMOND A. BURGESS, ESQ., AS TRUSTEE IN BANKRUPTCY FOR PINE
VALLEY BUILDERS, INC.

v.

FRANCIS X. QUEEN

October 28, 1983

*Elizabeth Cazden,* of Manchester, by brief and orally, for the plaintiff.

*Bielagus, Martina & Hubbard,* of Amherst (*Vincent C. Martina* on the brief and orally), for the defendant.

DOUGLAS, J. The defendant appeals from the Superior Court's (*Dalianis,* J.) judgment that awarded quantum meruit damages to the plaintiff trustee in bankruptcy as compensation for the partial construction of a house. We affirm in part and reverse in part.

I. *Background*

On June 27, 1977, Pine Valley Builders, Inc., the bankrupt, entered into an agreement with the prospective purchasers, the Moynihans (who are not parties to this action), to construct a house for them on land owned by the defendant. This agreement called for completion and sale of the house by September 30, 1977, and provided for a $25 per diem penalty for failure to complete the house on time. Construction proceeded sporadically during July, and in early August the bankrupt stopped work on the house. It is undisputed that at this time there was approximately $20,000 worth of materials and labor on the defendant's land supplied by the bankrupt and by various suppliers and subcontractors.

The defendant landowner was also acting as the real estate broker for the transaction and thus stood to gain the sales price of the lot ($13,000) and the real estate commission ($2,500). When construction ceased, the defendant, the purchasers, and the bankrupt entered into a series of negotiations which culminated in an informal agreement in October 1977 and was reduced to writing on February 10, 1978.

The essential elements of this agreement were: (1) the defendant would complete the construction of the house and receive the full purchase price from the purchasers; (2) the bankrupt builder was released from his obligation to complete the house; (3) the bankrupt was released from his obligation to pay the defendant a real estate commission; (4) the bankrupt was released from all possible claims arising from the failure to fully construct the house (this release included the per diem penalty, the payments of which were assigned to the defendant, who in turn released the bankrupt); and (5) the

bankrupt and the defendant agreed to enter into a collateral agreement which would more fully delineate their rights and liabilities.

Pursuant to this agreement, the defendant began working on the house in October 1977 and completed it in February 1978. The purchasers moved into the house on February 13, 1978, and the house was formally conveyed to them in April 1979.

In May 1978, the builder was forced into involuntary bankruptcy under 11 U.S.C.A. § 303 (1979) by a group of creditors, including the defendant. Subsequently, the bankrupt was discharged as to all creditors, and the plaintiff was appointed trustee.

The plaintiff trustee in bankruptcy then commenced this action to recover amounts owed to the unpaid creditors of the bankrupt in connection with construction of the house. The plaintiff's complaint alleged a fraudulent conveyance by the defendant and also sought quantum meruit damages for the value of the labor and materials that the bankrupt builder had contributed to the construction of the house. Essentially, the plaintiff asserted that the bankrupt expended approximately $20,000 towards the construction of the house, for which he was not compensated, and therefore, that the defendant was unjustly enriched.

The trial court found that there was insufficient evidence to support the fraudulent conveyance claim. We agree.

The trial court also found that the quantum meruit claim could survive the express contract and that the defendant was unjustly enriched because the bankrupt did not receive adequate consideration for the partial construction of the house. The trial court awarded the plaintiff $18,368.33 based on the actual costs of the bankrupt. We find that this part of the trial court's ruling must be modified and now turn to our reasoning.

## II. *The Contracts*

The actions of the parties gave rise to basically three separate contracts: (1) the contract between the bankrupt and the purchasers in which the bankrupt agreed to build the house (hereinafter contract no. 1); (2) the contract between the bankrupt, the purchasers, and the defendant, in which the defendant assumed the responsibilities of the bankrupt to complete the house and discharged the bankrupt (hereinafter contract no. 2); and (3) the contract between the defendant and the bankrupt, in which the bankrupt warranted that the materialmen and subcontractors had agreed to accept specific sums of money in full payment for their labor or materials (hereinafter contract no. 3).

The significance of these contracts needs further elaboration. Contract no. 1 was an express contract for the construction of a house. A

quantum meruit claim based on significant performance and unjust enrichment would survive this contract. *See Anderson v. Shattuck,* 76 N.H. 240, 242, 81 A. 781, 782 (1911).

Contract no. 2, however, requires a modification of the trial court's decision. For the reasons discussed below, we have determined that the contract between the bankrupt, the defendant and the purchasers was a novation. This novation was an express contract that completely redefined the rights and liabilities of the parties and thus controls our decision.

Contract no. 3, between the bankrupt and the defendant, although not produced at trial, was referred to during trial in the form of party admissions. These admissions of the contents of contract no. 3 indicate that this contract was intended not to be a separate contract, but rather to be a part of contract no. 2, the novation.

III. *The Novation*

The initial issue is whether the actions of the parties and the agreement signed on February 10, 1978, created a novation, and we rule that it did. A novation is defined as "the promise by a new party to render some performance, the promise itself being both offered and accepted as an immediate discharge of the creditor's antecedent claim against a debtor. Normally, the consideration for this promise is the discharge so given by the creditor. Such a discharge is itself a sufficient consideration; it is not necessary that the debtor should give any consideration." 6 A. CORBIN ON CONTRACTS § 1302 (1962). This court has recognized that the agreement to accept a third person as a new debtor need not be express but can be implied from the facts of the case. *See Warren v. Batchelder,* 15 N.H. 129, 136 (1844); *Tentindo v. Locke Lake Colony Ass'n.,* 120 N.H. 593, 598, 419 A.2d 1097, 1101 (1980).

The February 10, 1978, agreement, contract no. 2, indicates that the defendant's promise to complete the house resulted in the immediate discharge of the bankrupt's liabilities. This discharge of liability normally would provide all of the consideration necessary to form the novation contract. *See Head v. Richardson,* 16 N.H. 454, 455–56 (1844). The situation in this case, however, was not the typical situation in which a novation contract is formed. Not only did the creditor (purchasers) receive the benefit of the defendant's promise, but the defendant also received the benefit of the bankrupt's partial performance.

In light of these facts, the plaintiff contends that consideration should go not only to the purchasers but also to the bankrupt, and that in the absence of such consideration, the defendant is liable

in quantum meruit for his unjust enrichment. We agree that, when the new debtor retains a benefit conferred by the old debtor, consideration must also pass from the new debtor to the old, *see Stanley v. Kimball*, 80 N.H. 431, 436, 118 A. 636, 638 (1922) (unjust enrichment a "sufficient foundation for permitting recovery"). *See also R. J. Berke & Co. v. J. P. Griffin, Inc.*, 116 N.H. 760, 764, 367 A.2d 583, 586 (1976).

■ It is firmly established that consideration is necessary to support a novation. *See* 15 S. WILLISTON ON CONTRACTS § 1872 (3d ed. 1972). The defendant, however, contends that he provided the bankrupt with consideration adequate to support the novation. He claims that there were several items that either together or alone could have comprised the necessary consideration: (1) the $2,500 real estate commission from which the defendant released the bankrupt; (2) the $25 per diem liquidated damage clause which the purchasers assigned to the defendant and from which the defendant released the bankrupt; (3) the purchasers' release of the bankrupt from any breach of contract claim in exchange for the defendant's promise to complete the house.

The plaintiff contends that none of these claims against the bankrupt represents a valid claim and that the release of them did not, therefore, constitute adequate consideration. The trial court agreed with the plaintiff on this issue and held that there was insufficient consideration.

■ Unfortunately, the parties failed to address themselves to the bargaining process, the element which is crucial in determining the adequacy of consideration. When the parties have bargained for an item, promise or forebearance, the adequacy of the exchange should not be examined except in unusual situations. *See* 1 CORBIN ON CONTRACTS §§ 127, 132 (1963). Only in the absence of bargaining will the court weigh the relative values of the benefits and detriments. In fact, the consideration can even consist of "the creditor's surrender of his old claim, whether the claim was well founded or not, so long as it was not wholly frivolous and unreasonable." 15 S. WILLISTON ON CONTRACTS § 1872 (3d ed. 1972). *See* RESTATEMENT OF CONTRACTS § 76(b) (1932).

The facts of this case illustrate that the parties spent several months negotiating and bargaining over the terms of the novation. During the trial, the bankrupt's agent, Mr. Rice, indicated that he believed the consideration to be "fair" and that the bankrupt was relieved to be released from his obligations and liabilities.

■ The trial court found, and we agree, that there was insuffi-

cient evidence to support a claim of fraud against the defendant. Further, we do not believe that the defendant's proffered considerations were either frivolous or in bad faith. The parties bargained at arm's length over a period of time, and each of the three parties to the novation gave and received something of value. These facts lead us to conclude that it would be an unwarranted interference with the freedom of contract if we were to relieve any of these parties of their bargain simply because, in retrospect, it appears to have been unsound. *See* J. CALAMARI & J. PERILLO, CONTRACTS § 4-3 (2d ed. 1977).

## IV. *The Collateral Agreement*

Since we have determined that the parties created a valid novation, we must now ascertain the terms of this contract, as these terms must control our decision. Contract no. 2, the novation, was reduced to writing and there was no suggestion by anyone that it is inaccurate or that the parties should not be bound by its terms. Our main concern here is the effect of contract no. 3, which apparently was intended to be collateral to contract no. 2.

Contract no. 2 specifically refers to contract no. 3 in clause 7a: "The said [sales agreement] is subject to the ability of Pine Valley to perform all its rights and obligations in a collateral document signed with Queen." Although it is not possible for us to know all of the contents of contract no. 3 because it was apparently not produced at trial, uncontroverted admissions concerning its contents may be accepted. These admissions, primarily of the defendant, are therefore incorporated into the novation. *See Caswell v. Maplewood Garage*, 84 N.H. 241, 244, 149 A. 746, 749 (1930); *see also Piatek v. Swindell*, 84 N.H. 402, 404, 151 A. 262, 264 (1930).

During the trial and in his brief, the defendant admitted that, as a part of his performance of contract no. 3, he was to undertake the payment of the bankrupt's unpaid debts incurred in building the house. These admissions are thus incorporated into the novation and the defendant remains responsible for these debts. Consequently, we affirm the trial court's decision to the extent that it awarded the plaintiff $11,705.69.

## V. *The Quantum Meruit Claim*

We now turn to the plaintiff's claim of quantum meruit damages and the trial court's decision that this claim survives the express contract. The State of New Hampshire has long recognized the doctrine of quantum meruit and has provided one of the landmark cases in this area. In *Britton v. Turner*, 6 N.H. 481, 493 (1834),

the court held that community standards required that payment be made when goods or services are received. *See* J. CALAMARI & J. PERILLO, CONTRACTS §§ 11–26 (2d ed. 1977). This court has frequently permitted parties to contracts who have not substantially performed to recover damages based on the doctrine of quantum meruit. *See, e.g., R. J. Berke & Co. v. J. P. Griffin, Inc.*, 116 N.H. 760, 764, 367 A.2d 583, 586 (1976).

The trial court held that a quantum meruit claim can survive an express contract. We agree with this statement of the law. *See Anderson v. Shattuck*, 76 N.H. 240, 242, 81 A. 781, 782 (1911). The trial court, however, failed to fully appreciate the significance of this express contract, which we have determined was a novation. The effect of a novation "is to release the original debtor or discharge the original contract, and such original contract *cannot* thereafter be made the basis of an action either by or against a party who has been so discharged." 58 AM. JUR. 2d *Novation* § 25 (1971).

We are not prepared at this time to hold that a quantum meruit claim could never survive a novation. Under these facts, however, we hold that the quantum meruit claim in this case cannot survive *this* novation. When these parties bargained to create the novation, the bankrupt expressly surrendered any interest in the partially completed house. It would be unfair for us now to return to the bankrupt the basis of his bargain.

Accordingly, we reverse the trial court's decision to the extent that it awarded the plaintiff more than $11,705.69

*Affirmed in part;*
*reversed in part;*
*remanded.*

BATCHELDER and SOUTER, JJ., did not sit; the others concurred.