907 P.2d 51

**Elizabeth A. MAXWELL, Plaintiff–Appellant,**

v.

**FIDELITY FINANCIAL SERVICES, INC., an Arizona corporation, Defendant–Appellee.**

**No. CV–94–0060–PR.**

Supreme Court of Arizona, En Banc.

Nov. 21, 1995.

84

DeConcini, McDonald, Brammer, Yetwin & Lacy, P.C. by Christina Urias, Phoenix, for Plaintiff–Appellant.

Richard J. Hertzberg, Phoenix, for Defendant–Appellee.

O'Dowd, Burke & Lundquist, P.C. by Bruce A. Burke, Tucson, and Southern Arizona Legal Aid, Inc. by William E. Morris, Tucson, for Amicus Curiae.

## OPINION

FELDMAN, Chief Justice.

Elizabeth Maxwell petitions us to review a court of appeals opinion affirming a trial court ruling that the doctrine of novation barred Maxwell's claim that a contract was unconscionable and therefore unenforceable. *See Maxwell v. Fidelity Fin. Servs., Inc.,* 179 Ariz. 544, 880 P.2d 1090 (Ct.App.1993). We granted review to examine the law dealing with grounds for novation and unconscionability and to determine whether the principles of contract interpretation announced in *Taylor v. State Farm Mut. Auto. Ins. Co.,* 175 Ariz. 148, 854 P.2d 1134 (1993), are applicable to these issues.

## FACTS AND PROCEDURAL HISTORY

The facts, taken in the light most favorable to Maxwell, against whom summary judgment was granted, are that in December 1984, Elizabeth Maxwell and her then husband, Charles, were approached by Steve Lasica, a door-to-door salesman representing the now defunct National Solar Corporation (National). Lasica sold the Maxwells a solar home water heater for a total purchase price of $6,512. Although National was responsible for installation, the unit was never installed properly, never functioned properly, and was eventually declared a hazard, condemned, and ordered disconnected by the City of Phoenix. Thus, although the unit may have been intrinsically worthless, the question of unconscionability is determined as of the time the contract was made. A.R.S. § 47–2302.

Financing for the purchase was accomplished through a loan to the Maxwells from Fidelity Financial Services, Inc. (Fidelity). The sale price was financed for a ten-year period at 19.5 percent interest, making the total cost nearly $15,000.

At the time of the transaction, Elizabeth Maxwell earned approximately $400 per month working part-time as a hotel maid and her husband earned approximately $1,800 per month working for the local paper. At Fidelity's request, an appraisal was made of the Maxwells' South Phoenix home, where they had resided for the preceding twelve years. The appraisal showed that the Maxwells lived in a modest neighborhood, that their 1,539 square foot home was in need of a significant amount of general repair and maintenance, and that its market value was approximately $40,000.

In connection with the financing transaction, Elizabeth Maxwell signed numerous documents, including a loan contract, a deed of trust, a truth-in-lending disclosure form, and a promissory note and security agreement. The effect of these documents was not only to secure the deferred purchase price with a lien on the merchandise sold, but also to place a lien on Maxwell's house as additional security for payment on the water heater contract. The forms and their terms were unambiguous and clearly indicated that

Maxwell was placing a lien on her house. Included in the consumer credit contract between Maxwell and Fidelity was a clause expressly stating that Fidelity was subject to all claims by and defenses that Maxwell could assert against National.

Despite the fact that the water heater was never installed or working properly, Maxwell made payments on it for approximately three and one-half years, reducing the deferred purchase balance to $5,733. In 1988, Maxwell approached Fidelity to borrow an additional $800 for purposes unrelated to the original loan. In making this second loan, Fidelity required Maxwell to again sign a bundle of documents essentially identical to those she signed in 1984. Instead of simply adding $800 to Maxwell's outstanding balance on the 1984 contract, Fidelity created a new contract that included the unpaid balance of $5,733 on the 1984 loan, a term life insurance charge of $313, as well as the new $800 loan. In all, Maxwell financed the sum of $6,976 with this second loan. The terms of this latest loan also included interest at 19.5 interest and payments for a period of six years, making Maxwell's new payments, including interest, total nearly $12,000. The combined amount Maxwell would pay under the two contracts for a non-functioning water heater and the additional $800 loan thus totals approximately $17,000, or nearly one-half the value of her home.

Maxwell continued to make payments until 1990, when she brought this declaratory judgment action seeking, *inter alia*, a declaration that the 1984 contract was unenforceable on the grounds that it was unconscionable.

Following discovery, Fidelity moved for summary judgment asserting, among other things, that the statute of limitations had run on Maxwell's claim of unconscionability and, if not, that the 1988 contract worked a novation, thereby barring any action by Maxwell on the 1984 contract. Maxwell filed a memorandum in opposition to this motion and pointed to sworn testimony in her deposition, which Fidelity submitted with its motion, as raising genuine issues of material fact.

In a brief order, the trial court granted Fidelity's motion on the theory of novation:

The court has had under advisement [Fidelity's] motion for summary judgment. The court has considered the pleadings, the argument, and the authorities. It is ordered granting the motion. By way of explanation, the court is of the opinion that although the statute of limitations does not bar this action, the doctrine of novation does.

Minute Entry, May 31, 1991.

The court of appeals affirmed. *Maxwell,* 179 Ariz. 544, 880 P.2d 1090. In doing so, the court found that Maxwell did not properly respond to Fidelity's motion for summary judgment and did not present any controverting evidence. The court also found that Maxwell failed to present evidence raising a genuine issue of material fact that there was an agency relationship between National and Fidelity, that the 1984 contract was valid, and that Maxwell possessed the requisite intent to have the 1988 contract constitute a novation.

On review from summary judgment, the appellate court views the record in a light most favorable to the party opposing summary judgment (Maxwell) and will affirm only if no genuine issue of material fact exists. We therefore review this record to determine whether it could support a finding that Maxwell's claim of unconscionability was barred by the 1988 loan.

## PRELIMINARY ISSUES

Before discussing the merits of Maxwell's petition, we must address two collateral issues that arose during the course of the proceedings below: (1) Was Maxwell's response to Fidelity's motion for summary judgment proper, and (2) Must there be an agency relationship between Fidelity and National. Additionally, we find it necessary to provide a brief preface to the discussion of the issues in this case and the order in which it is necessary to address them.

### A. Maxwell's response to Fidelity's motion for summary judgment

We believe it necessary to correct an erroneous application of Rule 56 of the Rules

of Civil Procedure in the "General Considerations" section of the court of appeals' opinion. *Id.* at 547, 880 P.2d at 1093.

The court asserts that Maxwell's response to Fidelity's motion for summary judgment was deficient because she "did not file any separate affidavits" but rather "relied on her deposition . . ., documents attached to Fidelity's motion . . ., and her unverified complaint." *Id.* However, Arizona Civil Rule 56(c) provides, in relevant part:

> A party opposing the motion must file affidavits, *memoranda* or both. . . . The judgment sought shall be rendered forthwith if the pleadings, *deposition* [sic],[1] answers to interrogatories, and admissions *on file*, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.

(Emphasis added.) Rule 56(e) provides:

> [A]n adverse party may not rest upon the mere allegations or denials of the adverse party's pleading, but the adverse party's response, by affidavits *or as otherwise provided in this rule,* must set forth specific facts showing that there is a genuine issue for trial.

(Emphasis added.)

■ Thus, Rule 56(c) requires a response by the party opposing the motion but does not by its terms mandate the inclusion of affidavits. Similarly, Rule 56(e) mandates that the adverse party support its opposition either by affidavits *or* as otherwise provided in the rule. An opposing party can respond by memorandum, but the memorandum must reference depositions, answers to interrogatories, or admissions on file to comply with the rule.

■ In her response to Fidelity's motion for summary judgment, Maxwell pointed to specific testimony in her sworn deposition, which was submitted with Fidelity's motion and was therefore on file. Because Rule 56(c) contemplates just such a memorandum, Maxwell's response was not improper. If the responding party demonstrates by way of the other listed items in Rule 56(c) that there exists a genuine issue of material fact, then no affidavits are necessary and summary judgment is inappropriate. Accordingly, the court of appeals erred in finding Maxwell's response to the summary judgment motion deficient. The rule permits an opposing party to point out and rely on specific portions of a deposition on file. Maxwell did just that.

**B. Must there be an agency relationship between National and Fidelity?**

■ The court of appeals found that Maxwell failed to establish an agency relationship between National and Fidelity. The court reasoned that, absent such a relationship, Maxwell could not defeat Fidelity's motion for summary judgment on grounds of novation. We fail to see the relationship between establishing agency and defeating a claim of novation or pursuing a claim of unconscionability in this case. Fidelity stands in the shoes of National by virtue of both federal law and the terms of the contract to which it is a party. The 1984 *and* 1988 consumer credit contracts between Maxwell and Fidelity clearly state, in bold face, capital letters:

**ANY HOLDER OF THIS CONSUMER CREDIT CONTRACT IS SUBJECT TO ALL CLAIMS AND DEFENSES WHICH THE DEBTOR COULD ASSERT AGAINST THE SELLER OF GOODS OR SERVICES OBTAINED WITH THE PROCEEDS HEREOF.**

Thus, Maxwell need not establish an agency relationship between National and Fidelity to maintain a claim against Fidelity for unconscionability or to overcome Fidelity's claim of novation.

**C. Relationship between unconscionability and novation**

■ The trial court based its ruling solely on its interpretation of novation requirements under Arizona law, without reaching the unconscionability issue. However, when novation is presented as a defense to a claim of unconscionability, the existence of a nova-

---

1. Although Rule 56(c) refers to deposition in the singular, it is obvious from the text that it was meant to be plural.

tion depends in part on the validity of the underlying contract. This is for two reasons. First, if the underlying contract is unconscionable and unenforceable, it may not be possible to validate it through the attempt to make a novation by writing a new contract. Second, if the underlying contract is unconscionable, the new contract created by the novation may also be unconscionable. Thus, we must first determine whether the underlying contract may be unconscionable before we can determine if the subsequent contract is a valid novation. Accordingly, we turn first to the doctrine of unconscionability under Arizona law.

## DISCUSSION

### A. Unconscionability

**1. Is the determination of unconscionability for the trier of fact or for the court to decide?**

█ Maxwell contends that the determination of whether a contract is unconscionable is for the trier of fact. We find no support for this position given that Arizona law, which is consistent with the law in every other jurisdiction that has ruled on this issue, clearly provides that the determination of unconscionability is to be made by the court as a matter of law. *See* A.R.S. § 47–2302 [2]; *accord* RESTATEMENT (SECOND) OF CONTRACTS § 208 cmt. f (hereinafter RESTATEMENT). *See also* RICHARD W. DUSENBERG & LAWRENCE P. KING, 3 BENDER'S UNIFORM COMMERCIAL CODE SERVICE 4–173 (1995) and cases cited therein.

█ Obviously, the court cannot make its determination without first making factual findings upon which to base its legal analysis. *See* A.R.S. § 47–2302(B). Therefore, when it is claimed that the contract is unconscionable, the parties must be given an opportunity to present evidence of its commercial setting, purpose, and effect to aid the court in making the determination. *Id.*

Such factual findings do not, however, convert the determination on unconscionability from one that is a matter of law as applied to those facts to one that is in whole a matter of fact. *See Angus Medical Co. v. Digital Equip. Corp.*, 173 Ariz. 159, 167, 840 P.2d 1024, 1032 (Ct.App.1992) ("Incidental findings of fact are made by the court rather than by a jury, but are accorded the usual weight given to such findings of fact in appellate review.") (citing RESTATEMENT § 208 cmt. f). Nor is it required that in every instance a judge hold a separate, formal evidentiary hearing to determine the contract's commercial setting, purpose, and effect. Our statute only requires a reasonable opportunity to present evidence; *on a developed record*, such opportunity may be equally well afforded at the hearing on a motion for summary judgment. *See Golden Reward Mining Co. v. Jervis B. Webb Co.*, 772 F.Supp. 1118 (D.S.D.1991); *Earl M. Jorgensen Co. v. Mark Constr., Inc.*, 56 Haw. 466, 540 P.2d 978 (1975). In this case, however, neither Fidelity's motion for summary judgment, Maxwell's response thereto, nor the trial court's ruling addressed the merits of the unconscionability claim; instead, they focused on the novation issue.

### 2. The test for unconscionability

█ The court of appeals found the 1984 contract valid because Maxwell "failed to raise a material issue of fact that the agreement evidenced by [the contract documents] was beyond her reasonable expectations or was unconscionable." It is not clear why the court of appeals applied the test of "reasonable expectations" as this test is more correctly associated with contracts of adhesion, not claims of unconscionability, and the issue

---

**2.** Arizona's statutory provision on unconscionability, A.R.S. § 47–2302, provides:

 A. If the *court* as a *matter of law* finds the contract or any clause of the contract to have been unconscionable at the time it was made the court may refuse to enforce the contract, or it may enforce the remainder of the contract without the unconscionable clause, or it may so limit the application of any unconscionable clause as to avoid any unconscionable result.

 B. When it is claimed *or appears to the court* that the contract or any clause thereof may be unconscionable the parties shall be afforded a reasonable opportunity to present evidence as to its commercial setting, purpose and effect to aid the court in making the determination. (Emphasis added.) This provision is an exact analog of U.C.C. § 2–302. We note that subpart B allows the court to raise the issue of unconscionability *sua sponte*.

of adhesion contracts was neither before the trial court nor briefed or argued on appeal. This court previously has noted the rule that "reasonable expectations" and unconscionability are two distinct grounds for invalidating or limiting the enforcement of a contract and has stated that "even if [the contract provisions are] consistent with the reasonable expectations of the party" they are unenforceable if they are oppressive or unconscionable. *Broemmer v. Abortion Serv. of Phoenix,* 173 Ariz. 148, 151, 840 P.2d 1013, 1016 (1992) (quoting *Graham v. Scissor–Tail, Inc.,* 28 Cal.3d 807, 171 Cal.Rptr. 604, 611–12, 623 P.2d 165, 172–73 (1981)).

This court has not previously had occasion to discuss the requisite elements of unconscionability under Arizona's adoption of the Uniform Commercial Code (U.C.C.). Because Maxwell raises this issue and because resolution hinges on whether the 1984 contract may be unconscionable, we turn to an examination of unconscionability under A.R.S. § 47–2302.

### 3. The history of unconscionability

Traditionally, equity courts recognized the defense of unconscionability in denying relief to plaintiffs who were guilty of unconscionable conduct. *See* DAN B. DOBBS, 2 LAW OF REMEDIES 703 (2d ed. 1993). Because barring relief was a matter of the chancellor's discretion, equity never developed a clear set of rules for analyzing claims of unconscionability. *See id.* Additionally, in equity unconscionability served as a remedial doctrine, limiting a party's remedies without truly affecting its substantive legal rights. *Id.* at 704. However, the enactment of an unconscionability defense under U.C.C. Article 2 changed that. The rule as it now exists is largely substantive, working primarily as a defense both in law and in equity and applying to claims for damages as well as specific performance. *Id.* at 704–05.

Although U.C.C. § 2–302 recognized and codified the amorphous equitable doctrine, it did little to provide a set of rules for analyzing claims of unconscionability. Also lacking in the statutory recognition of unconscionability is a definition of that term. Courts and respected commentators alike have grappled

with defining and applying unconscionability under the Code since its adoption. To this day, both groups remain divided on the proper method for doing so, though they share some common ground on defining such a test.

Within this common area, the elements of unconscionability can be ascertained to fulfill the Code's obvious intent of protecting against unconscionable contracts while not unnecessarily denying parties the benefit of their bargain. Although no litmus test exists, the cases do provide a reasonable, workable analysis.

### 4. Divisions of unconscionability under the U.C.C.

This court previously has acknowledged that the unconscionability principle involves an assessment by the court of

> whether, in the light of the general commercial background and the commercial needs of the particular trade or case, the clauses involved are so one-sided as to be unconscionable under the circumstances existing at the time of the making of the contract.... The principle is one of the prevention of oppression and unfair surprise ... not of disturbance of allocation of risks because of superior bargaining power.

*Seekings v. Jimmy GMC of Tucson, Inc.,* 130 Ariz. 596, 602, 638 P.2d 210, 216 (1981) (citations omitted). This somewhat circular articulation of the principle, however, is not readily applicable to the infinite variety of cases that may involve the doctrine of unconscionability.

The framework upon which the vast majority of courts construct their analysis consists of the well recognized division of unconscionability into substantive and procedural parts. *See, e.g.,* JAMES J. WHITE & ROBERT S. SUMMERS, 1 UNIFORM COMMERCIAL CODE 204, n. 8 and cases cited therein; JOHN D. CALAMARI & JOSEPH M. PERILLO, CONTRACTS 406 (3d ed. 1987). Professor Dobbs provides the following explanation of the difference between these two types:

> Procedural or process unconscionability is concerned with "unfair surprise," fine print clauses, mistakes or ignorance of impor-

tant facts or other things that mean bargaining did not proceed as it should. Substantive unconscionability is an unjust or "one-sided" contract. Substantive unconscionability is important in two ways. First, substantive unconscionability sometimes seems sufficient in itself to avoid a term in the contract. Second, substantive unconscionability sometimes helps confirm or provide evidence of procedural unconscionability.

DOBBS, *supra* at 706 (footnote omitted). This dichotomy evolved from a distinction made by the late Professor Leff in his oft-cited article *Unconscionability and The Code— The Emperor's New Clause*, 115 U.PA.L.REV. 485, 487 (1967). In his article, Professor Leff distinguished between "bargaining naughtiness" (procedural unconscionability) and overly harsh terms (substantive unconscionability). *Id.*

Over the years, courts have refined the two divisions of unconscionability and identified several factors that are indicative of each. Procedural unconscionability was well-explained in *Johnson v. Mobil Oil Corp.*:

Under the procedural rubric come those factors bearing upon ... the real and voluntary meeting of the minds of the contracting party: age, education, intelligence, business acumen and experience, relative bargaining power, who drafted the contract, whether the terms were explained to the weaker party, whether alterations in the printed terms were possible, whether there were alternative sources of supply for the goods in question.

415 F.Supp. 264, 268 (E.D.Mich.1976) (internal quotations omitted). As Professors White and Summers have noted, procedural unconscionability bears a strong resemblance to its "common-law cousins" of fraud and duress. WHITE & SUMMERS, *supra* at 204.

 Substantive unconscionability concerns the actual terms of the contract and examines the relative fairness of the obli-

gations assumed. *Resource Management Co. v. Weston Ranch & Livestock Co.*, 706 P.2d 1028, 1041 (Utah 1985). Indicative of substantive unconscionability are contract terms so one-sided as to oppress or unfairly surprise an innocent party, an overall imbalance in the obligations and rights imposed by the bargain, and significant cost-price disparity. *Id.* (citations and internal quotations omitted).

We believe these authorities provide useful illustrations of both divisions of unconscionability under the U.C.C., although we do not restrict applicability of the doctrine to the factors outlined.

## 5. Application

The point of agreement by courts on the substantive-procedural elements also marks a point of departure in analyzing claims of unconscionability. *See generally* WHITE & SUMMERS, *supra* at 218–20. Many courts, perhaps a majority, have held that there must be some quantum of *both* procedural and substantive unconscionability to establish a claim, and take a balancing approach in applying them. *Id.* at 219. *See also* 2 WILLIAM D. HAWKLAND, UNIFORM COMMERCIAL CODE SERIES § 2–302:05 (1984) and cases cited therein. Other courts have held that it is sufficient if *either* is shown. *See, e.g., Gillman v. Chase Manhattan Bank, N.A.*, 73 N.Y.2d 1, 537 N.Y.S.2d 787, 794, 534 N.E.2d 824, 829 (1988) ("While determinations of unconscionability are ordinarily based on the court's conclusion that both the procedural and substantive components are present ..., there have been exceptional cases where a provision of the contract is so outrageous as to warrant holding it unenforceable on the ground of substantive unconscionability alone.") (citing *State v. Wolowitz*, 96 A.D.2d 47, 468 N.Y.S.2d 131 (1983)). In addition to the numerous courts holding that either procedural or substantive unconscionability is sufficient,[3] the leading commentators in this

---

**3.** *See, e.g., Resource Management Co. v. Weston Ranch & Livestock Co.*, 706 P.2d 1028, 1043 (Utah 1985) ("Gross disparity in terms, absent evidence of procedural unconscionability, can support a finding of unconscionability."); *American Home Improvement, Inc. v. MacIver*, 105 N.H. 435, 201 A.2d 886, 889 (1964) (relying explicitly on U.C.S. § 2–302 and finding unconscionable, based on price-value disparity, a contract requiring payment of $1,609 for goods and services valued at "far less"); *World Enter., Inc. v. Midcoast Aviation Serv., Inc.*, 713 S.W.2d 606,

field have also endorsed this position. *See* WHITE & SUMMERS, *supra* at 220 (advocating the sufficiency of excessive price alone).

The cases that require a showing of both procedural and substantive unconscionability appear to be rather fact-specific, based more on the historical reluctance of courts to disturb contracts than on valid doctrinal underpinning.

> In some cases substantive unconscionability is found because the contract price is grossly excessive (or sometimes grossly inadequate). Most of these cases present additional elements such as actual misrepresentations, gross mistreatment of people who are already disadvantaged, or a subject matter such as premarital settlements that calls for intense state scrutiny by judges. *In some of them, the substantive unconscionability really seems to be evidentiary only, that is, as confirming the conclusion that the process of bargaining was itself defective.*

DOBBS, *supra* at 707 (footnote omitted) (emphasis added); *see also* CALAMARI & PERILLO, *supra* at 406 ("[C]ontracts involving grossly unequal exchanges almost always involve some impropriety in the negotiating process or disability of a party."); WHITE & SUMMERS, *supra* at 218 ("Almost all of [the cases finding substantively unconscionable terms] exhibit creditor behavior that may be regarded as both procedurally and substantively unconscionable.").

Additional evidence that the dual requirement position is more coincidental than doctrinal is found within the very text of the statute on unconscionability, which explicitly refers to "the contract *or any clause* of the contract." A.R.S. § 47–2302 (emphasis added). Conspicuously absent from the statutory language is any reference to procedural aspects. That the U.C.C. contemplated substantive unconscionability alone to be sufficient is the most plausible reading of the language in § 47–2302, given that the Code itself provides for *per se* unconscionability if there exists, without more, a substantive *term* in the contract limiting consequential damages for injury to the person in cases involving consumer goods. *See* A.R.S. § 47–2719(C). It is wholly inconsistent to assert that unconscionability under § 47–2302 requires some procedural irregularity when unconscionability under § 47–2719 clearly does not.

 Therefore, we conclude that under A.R.S. § 47–2302, a claim of unconscionability can be established with a showing of substantive unconscionability alone, especially in cases involving either price-cost disparity or limitation of remedies. If only procedural irregularities are present, it may be more appropriate to analyze the claims under the doctrines of fraud, misrepresentation, duress, and mistake, although such irregularities can make a case of procedural unconscionability. *See Resource Management Co.,* 706 P.2d at 1043. However, we leave for another day the questions involving the remedy for procedural unconscionability alone.

We conclude further that this case presents a question of at least substantive unconscionability to be decided by the trial court. From the face of it, we certainly cannot conclude that the contract as a whole is not unconscionable, given the $6,500 price of a water heater for a modest residence, payable at 19.5 percent interest, for a total time-payment price of $14,860.43. These facts present at least a question of grossly-excessive price, constituting substantive unconscionability. *See* DOBBS, *supra* at 707; WHITE & SUMMERS, *supra* at § 4–5 and cases cited therein. This contract is made even more harsh by its security terms, which, in the event of non-payment, permit Fidelity not only to repossess the water heater but fore-

610 (Mo.App.1986) ("Unconscionability is defined as either procedural or substantive."); *Frank's Maintenance & Eng'g, Inc. v. C.A. Roberts Co.,* 86 Ill.App.3d 980, 42 Ill.Dec. 25, 31–32, 408 N.E.2d 403, 409–10 (1980) ("Unconscionability can be *either* procedural or substantive or a combination of both.") (emphasis added). *Cf. Schroeder v. Fageol Motors, Inc.,* 86 Wash.2d 256, 544 P.2d 20, 23 (1975) (en banc) (recognizing that cases fall within the two classifications of procedural and substantive unconscionability).

Indeed, it has long been recognized that gross disparity in terms may satisfy the standard for unconscionability by itself. *See Marks v. Gates,* 154 F. 481, 483 (9th Cir.1907) (inadequacy of consideration sufficient ground for withholding specific performance *if* it is so gross as to render the contract unconscionable).

close on Maxwell's home. The apparent injustice and oppression in these security provisions not only may constitute substantive unconscionability but also may provide evidence of procedural unconscionability. *See* DOBBS, *supra* at 706–07 (citing *Williams v. Walker–Thomas Furniture Co.,* 350 F.2d 445 (D.C.Cir.1965)).

Under the U.C.C. as enacted in A.R.S. § 47–2302, the court may "refuse enforcement of the contract altogether." DOBBS, *supra* at 705; RESTATEMENT § 208. The present factual record, before the statutorily required evidentiary hearing, certainly contains some evidence that the entire 1984 contract, including sale price, security provisions, and remedies, is unenforceable. We therefore turn to the effect of the doctrine of novation in such a situation.

## B. Novation

### 1. Can the doctrine of novation preclude an action to void a pre-existing contract on grounds of unconscionability?

The thrust of Maxwell's argument on this issue is that the trial court erred in finding her claim of unconscionability barred by the doctrine of novation. Maxwell argues that a finding of unconscionability with respect to the 1984 contract would have prevented the formation of a valid agreement through the 1988 contract. We agree.

"Novation may be defined as the substitution by mutual agreement of … a new debt or obligation for an existing one which is thereby extinguished." *Western Coach Corp. v. Roscoe,* 133 Ariz. 147, 152, 650 P.2d 449, 454 (1982) (citations and internal quotations omitted). In this case, therefore, a valid novation requires a previously enforceable debt, the agreement of all parties to a new contract, the extinguishment of the old debt, and the validity of the new one. *See Dunbar v. Steiert,* 31 Ariz. 403, 404, 253 P. 1113, 1113 (1927); *United Sec. Corp. v. Anderson Aviation Sales Co.,* 23 Ariz.App. 273, 275, 532 P.2d 545, 547 (1975). The effect of a novation is to discharge the original debt. *See* RESTATEMENT § 280 cmt. b.

Because the equitable principles underlying codification of unconscionability are part and parcel of the statute, courts will not lend their hand to the enforcement of oppressive contracts, and the statute mandates that Arizona courts must either (1) refuse to enforce an unconscionable contract, (2) refuse to enforce any unconscionable portion of a contract, or (3) limit the application of any unconscionable clause of a contract to avoid any unconscionable result. *See* A.R.S. § 47–2302(A). Assuming that Maxwell's original debt or obligation was unenforceable because the contract was unconscionable at the time it was entered into, then Maxwell had neither obligation nor duty, and therefore nothing for which a novation could substitute, discharge, or extinguish. It was error for the trial court to grant summary judgment on Fidelity's claim of novation without first resolving the legal question of whether the 1984 contract was unconscionable because a condition precedent to a valid novation is a previous *valid* duty or obligation. *See Dunbar,* 31 Ariz. at 404, 253 P. at 1113.

### 2. How valid must the prior obligation be to support a novation?

Fidelity posits that the term "valid" in this context means only that the prior contract was not "wholly frivolous and unreasonable." In support of this position Fidelity directs us to *Burgess v. Queen,* 124 N.H. 155, 470 A.2d 861, 865 (1983); *Harp v. Gourley,* 68 N.M. 162, 359 P.2d 942, 946 (1961); and *Hudson v. Maryland State Housing Co.,* 207 Md. 320, 114 A.2d 421, 424 (Md.1955). None of these cases involves the attempt to novate a debt that is unenforceable because of unconscionability.

In *Hudson,* the Maryland court found that the underlying contract, which was at the heart of a disputed novation, was not void but only voidable when the seller failed to comply with the statute requiring it to give a buyer a copy of a land installment contract. Because the contract was only voidable at the option of the debtor, the original contract was valid to the extent that a subsequent agreement constituted a valid novation. *Hudson,* 114 A.2d at 424. *Burgess* involved a substitution of debtors. The court found that "the credi-

tor's surrender of his old claim [against a bankrupt debtor], whether the claim was well founded or not, so long as it was not wholly frivolous and unreasonable," was sufficient consideration for a novation. *Burgess,* 470 A.2d at 865 (quoting 15 WILLISTON ON CONTRACTS § 1872 (3d ed. 1972)). *Harp* also involved a substitution of debtors. The court found that "it is not essential that the original obligation discharged by the subsequent novation shall have been valid in every sense of the word.... [I]t is clearly possible in a novation of the debtor, for a new debtor to promise absolutely to pay money in consideration of the creditor's surrender of his old claim, whether the claim was well founded or not, so long as it was not wholly frivolous and unreasonable." *Harp,* 359 P.2d at 946 (quoting 6 WILLISTON ON CONTRACTS § 1872) (rev. ed.).

We need not quarrel with these cases or the principles they articulate to find them inapplicable here. We deal with neither a voidable contract nor a novation of the debtor. If the debt created by the 1984 contract was unconscionable when entered into, then it was unenforceable; therefore Maxwell had no obligation, and there is nothing to novate or substitute for. Because the doctrine of unconscionability forbids using courts as instruments of oppression, under such circumstances the *original* contract obligation would be a nullity. Fidelity cannot revive a dead branch by grafting it onto a living tree. It is not clear, moreover, how simply reciting the terms of the 1984 contract, in a new and substantially identical instrument and under substantially identical circumstances four years later, provides any help to Fidelity.

If anything, Fidelity's argument for novation raises substantial questions about the unconscionability of the 1988 contract, as that contract is nearly identical to the 1984 contract. By the terms of the 1988 contract, the outstanding $5,700 principle balance due on the water heater after Maxwell had already made forty-two payments on the 1984 contract was "bundled" with the unrelated $800 cash loan and a term life insurance policy. The 1988 loan amount, totaling $6,976.92, was financed again at 19.5 percent interest and stretched for another six years, with another

$5,000 of precomputed interest added, for a total deferred price of $11,887.20. This amount, when added to what Maxwell had already paid, made the total deferred purchase price of the inoperable water heater and the $800 cash loan more than $17,000. Our unconscionability analysis of the 1984 contract applies *a fortiori* to the 1988 contract. If the 1984 contract was substantively unconscionable, the resulting unenforceability could not be avoided by redrafting the documents with essentially identical provisions under a new date. By preparing a new set of almost identical papers in 1988, Fidelity could not transmogrify the water heater deal made in 1984.

Finally, it is necessary to point out that the 1988 contract was not a compromise and settlement of a claim. Fidelity presented no evidence and made no allegation that Maxwell intended to settle a claim of unconscionability or that she even presented a claim when she executed the 1988 contract. Accordingly, we hold that if found to be unconscionable, Maxwell's contracts with Fidelity are invalid for purposes of novation.

**C. *Taylor v. State Farm Mut. Auto. Ins. Co.***

Maxwell suggests that the principles of contract interpretation announced in *Taylor* should apply to the determination of whether the 1984 contract was unconscionable and whether the 1988 contract was a valid novation. *Taylor* involved a dispute over the meaning of language contained in an insurance release agreement and raised the issue of the proper use of parol evidence in interpreting the disputed meaning of contractual terms. 175 Ariz. at 151, 152, 154, 854 P.2d at 1137, 1138, 1140. In *Taylor* we held that when extrinsic evidence is offered to prove a proffered interpretation of the contractual language "the judge [should] first consider[ ] the offered evidence and, if he or she finds that the contract language is 'reasonably susceptible' to the interpretation asserted by its proponent, the evidence is admissible to determine the meaning intended by the parties." 175 Ariz. at 154, 854 P.2d at 1140.

■ Thus, *Taylor* is applicable when a dispute as to the *meaning* of the contractual

language exists, but it is not appropriate for determining the *effect* of the decided meaning. Substantive unconscionability is merely an *effect* stemming from known contract terms. *See* WHITE & SUMMERS, *supra* at 203–04. A novation is but another contract and is thus subject to the existing body of contract law. If the meaning of language contained in a contract purported to be a novation is disputed, resort to the principles in *Taylor* or any other recognized interpretive aid is wholly appropriate.

Here, however, there is no dispute about the meaning of any of the language in either of the contracts. The dispute centers around the circumstances and effects of these contracts. Accordingly, *Taylor* has no application to this case.

### CONCLUSION

We are not satisfied from the state of this record that Fidelity had a meaningful opportunity to present evidence on the commercial setting, purpose, and effect of the 1984 contract, as required by A.R.S. § 47–2302. The trial court expressly based its decision entirely on the doctrine of novation without addressing the fundamental question of unconscionability in the manner required by statute.

In his special concurrence, Justice Martone would have us hold that both the 1984 and 1988 contracts are unconscionable as a matter of law. Certainly, on the present record, before an evidentiary hearing, both contracts appear to be unconscionable. But we do not reach that final conclusion for good reason. The unconscionability finding is for the trial judge to make, after the evidentiary hearing contemplated by A.R.S. § 47–2302. The opportunity to present evidence, according to the statute, "shall" be extended when it "appears to the [trial court] that a contract may be unconscionable."

The record contains evidence of unconscionability, and the issue was touched on in Fidelity's motion papers. But we neither ignore the facts nor demonstrate an unwillingness to accept what has been proved. *See* special concurrence at 63. We simply believe that the final conclusion should abide the

taking of evidence. If the facts then are no more or no different than they presently appear, it should be no problem for the trial judge to make the correct decision. Thus, there is neither need nor propriety in granting what Justice Martone concedes is an "unasserted cross-motion for summary judgment." *Id.* After the evidence is in, either party may make the appropriate motion, and the trial court may then perform its function of ruling on that motion. We believe it is bad judicial policy for the appellate court to make and then grant summary judgment motions on appeal.

Indeed, after the evidence is in, it may be possible to say, as Justice Martone does, that Fidelity "took advantage of a limited person living on the margin of human existence," intending "to extract" unfair profits from this "marginal person." *Id.* If appropriate at all, such a colorful description is better reserved until after the trial judge invokes the provisions of A.R.S. § 47–2302 and hears evidence on the commercial setting, purpose, and effect of the contracts.

Therefore, we vacate the court of appeals' opinion, reverse the trial court's judgment, and remand to the trial court for proceedings consistent with this opinion and A.R.S. § 47–2302.

MOELLER, V.C.J., and CORCORAN and ZLAKET, JJ., concur.

MARTONE, Justice, concurring in the judgment.

I would hold that the 1984 contract and the 1988 contract are unconscionable as a matter of law. As the majority acknowledges, a declaration of unconscionability under A.R.S. § 47–2302(A) is a legal conclusion to be made by the court. And the evidence referred to in § 47–2302(B) "is for the court's consideration, and not the jury's." U.C.C. § 2–302, Comment 3 (1962). The facts as outlined by the majority lead to one inescapable conclusion: one of unconscionability. If these contracts are not unconscionable as a matter of law, what contract would be?

The majority refuses to hold these contracts unconscionable as a matter of law because it says Fidelity did not have an op-

portunity to present evidence "on the commercial setting, purpose, and effect of the 1984 contract." *Ante*, at 93, 907 P.2d at 62. The majority argues that "neither Fidelity's motion for summary judgment [nor] Maxwell's response ... addressed the merits of the unconscionability claim." *Ante*, at 87, 907 P.2d at 56.

But they did. Fidelity moved for summary judgment on the unconscionability claim, with references to the record. Fidelity's Motion for Summary Judgment at 15. Maxwell resisted summary judgment on the unconscionability claim with references to the record. Plaintiff's Response in Opposition to Defendant's Motion for Summary Judgment at 5–7. Both sides argued the evidence as it related to commercial setting, purpose and effect. *Id.* Fidelity's entire 11 page Reply to the Plaintiff's Response related to unconscionability. Indeed, Fidelity said:

> Although A.R.S. § 47–2302(B) states that when it is claimed or appears that a contract may be unconscionable, the parties shall be afforded a "reasonable opportunity to present evidence," *such does not bar summary judgment here because Plaintiff has had such an opportunity to present evidence* by way of Affidavit. This court then determines whether there is a fact issue.

Defendant's Reply to Plaintiff's Response to Motion for Summary Judgment at 7–8 (emphasis added). It is thus clear that Fidelity itself admits it had its opportunity to present evidence on the claim of unconscionability.

The majority acknowledges that § 47–2302(B) "only requires a reasonable opportunity to present evidence" and that "such opportunity may be equally well afforded at the hearing on a motion for summary judgment," *ante*, at 87, 907 P.2d at 56, but then suggests that some sort of evidentiary hearing or trial is required. *Ante*, at 93, 907 P.2d at 62. The contradiction inherent in this approach is obvious. The majority is simply unwilling to accept the fact that unconscionability was the subject of the motion for summary judgment. We do not have the "supreme power" to ignore the record. *Espinoza v. Martin*, 182 Ariz. 145, 894 P.2d 688, 696 (1995) (Feldman, C.J., concurring).

On the undisputed facts, the commercial setting, purpose and effect of the contracts are tragically plain. The commercial setting: a "now defunct" entity, *ante*, at 84, 907 P.2d at 53, took advantage of a limited person living on the margin of human existence. The purpose: to extract "$17,000" from a "hotel maid" who earned "$400 per month." *Id.* at 84–85, 907 P.2d at 53–54. The effect: to subject a marginal person to the risk of loss of her home, all for a hot water heater that "was never installed properly, [and] never functioned properly." *Id.* at 84, 907 P.2d at 53.

I would remand this case to the trial court for entry of judgment in favor of Maxwell. On a record like this, the court has the power to grant an unasserted cross-motion for summary judgment. *Trimmer v. Ludtke*, 105 Ariz. 260, 263, 462 P.2d 809, 812 (1969) ("[A] judgment on a motion for summary judgment may be either for or against the moving party, even though the opposing party has not filed such a motion."); *Celotex Corporation v. Catrett*, 477 U.S. 317, 326, 106 S.Ct. 2548, 2554, 91 L.Ed.2d 265 (1986) ("[C]ourts are widely acknowledged to possess the power to enter summary judgments *sua sponte*, so long as the losing party was on notice that she had to come forward with all of her evidence.").